J-A16030-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KYON DANE MCDONALD | : | |
| | : | |
| Appellant | : | No. 218 MDA 2022 |

Appeal from the Judgment of Sentence Entered January 4, 2022
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s): CP-40-CR-0004040-2018

BEFORE: PANELLA, P.J., BENDER, P.J.E., and McCAFFERY, J.

MEMORANDUM BY BENDER, P.J.E.: **NOVEMBER 13, 2023**

Appellant, Kyon Dane McDonald, appeals from the judgment of sentence of 60 to 120 months' incarceration, imposed after a jury convicted him of voluntary manslaughter. Appellant's trial took place slightly more than three years after charges were initiated, and his primary claim on appeal is that the trial court erred by denying his motion to dismiss the charges pursuant to the rule-based right to a speedy trial. He separately contends that the court erred by permitting the Commonwealth's expert witness to review video surveillance frame-by-frame. After careful review, we affirm.

On September 27, 2018, a citizen called 911 at 2:26 a.m. to report a shooting at Robbie Nick's Sports Bar in Luzerne County. The victim, Tierees Owens, was admitted to a hospital at 3:02 a.m., and pronounced dead a few minutes later. The bar's owner, Robbie Nicoletti, Jr., told the police that one of his employees called him slightly before 2:30 a.m. to report a disturbance

involving several people outside. Nicoletti, who was at another bar a short distance away, walked back to his establishment. There, he met Owens, whom he knew, and escorted him from the altercation. However, Owens broke off and ran back towards the disturbance. Nicoletti heard a gunshot and saw Appellant fire multiple additional shots.

Nicoletti related the above to investigators and provided access to his surveillance system, which showed Appellant inside the bar at 1:43 a.m. The video shows Appellant obtaining a gun from one of the bar's bouncers. The outside surveillance cameras show an altercation, and Appellant firing a handgun multiple times at Owens. The video shows Appellant securing the gun in his waistband and leaving. Appellant later admitted during an interrogation that he separated the magazine from the firearm and discarded both in a wooded area.

Pennsylvania State Troopers were called to assist, and they recovered seven nine-millimeter casings from the scene. Two projectiles were recovered from the pavement while the remaining five were found in Owens' body during an autopsy. Appellant was arrested the next day and charged with one count of criminal homicide.

At trial, the Commonwealth sought a conviction for first-degree murder, arguing that Appellant intentionally killed Owens while Appellant argued self-defense. Appellant testified that, while inside the bar, Owens touched Appellant's wife and Appellant told him to leave her alone. Additionally, Owens was with two other men who participated in fights that evening and generally

caused issues that evening. Appellant testified that Owens and his friends threatened to shoot up the bar and that, while outside the bar, Owens displayed a gun and repeatedly threatened to kill Appellant.

Appellant was ultimately convicted of voluntary manslaughter and sentenced on January 4, 2022, as previously stated. He filed a timely notice of appeal and complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The trial court thereafter filed its Rule 1925(a) opinion. Herein, Appellant states two issues for our review:

> I. Whether the trial [court] erred by not dismissing this case pursuant to Rule 600 of the Pennsylvania Rules of Criminal Procedure (and the Pennsylvania and United States Constitutions)?
>
> II. Whether the trial court erred by admitting and permitting use of [a] frame-by-frame[,] slowed down video?

Appellant's Brief at 5.

"In general, a trial court's denial of a Rule 600 motion is reviewed for an abuse of discretion; however, it is subject to plenary review when 'the dispositive question implicates legal issues.'" *Commonwealth v. Lear*, 290 A.3d 709, 718 (Pa. Super. 2023) (quoting *Commonwealth v. Harth*, 252 A.3d 600, 614 n.13 (Pa. 2021)). The basic principle of Rule 600 is that a full calendar year is sufficient time for the Commonwealth to prepare the case and bring the defendant to trial. *See generally Commonwealth v. Mills*, 162 A.3d 323, 324 (Pa. 2017) (holding that "time attributable to the normal progression of a case simply is not 'delay' for purposes of Rule 600"). We use

the phrase "mechanical run date" to define "the date by which the trial must commence pursuant to the time limitations set forth in Rule 600." **Harth**, 252 A.3d at 607 n.7. The mechanical run date is calculated by adding 365 days to the date on which the criminal complaint was filed. Hence, the mechanical run date in this case was September 27, 2019.

When, as here, the mechanical run date has been exceeded, the defendant may seek dismissal under Rule 600. To determine whether Rule 600 is violated, our precedents formerly discussed adjustments of the mechanical run date by designating periods of time as either "excludable" or "excusable delay." **Commonwealth v. Malone**, 294 A.3d 1247, 1248 (Pa. Super. 2023). The former category applied to delays attributable to the defendant or his attorneys. Those periods of time would automatically extend the run date without any analysis of the Commonwealth's due diligence. **See Commonwealth v. Taylor**, 489 A.2d 853, 859 (Pa. Super. 1985) (explaining that for delays "granted at the request of the defense … the Commonwealth is not required to exercise due diligence in order to toll" the rule-based right to a speedy trial). Excusable time described periods of delay either caused by the Commonwealth or by circumstances outside of its control. If the Commonwealth caused the delay, then those periods of time were chargeable to the Commonwealth unless it acted with due diligence. In cases of judicial delay, such as postponement of the trial due to court unavailability, the Commonwealth must prove that it acted with due diligence. **See Harth**, **supra** (concluding that Commonwealth's failure to fulfill its discovery

- 4 -

obligations constituted lack of due diligence; trial court unavailability for trial irrelevant).

We have since abandoned those labels, as the "new Rule 600 eliminated the distinction between these two buckets of removable calculable time. Under its new verbiage, 'periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence' forms the basis of what is known as 'includable time.'" ***Commonwealth v. Wiggins***, 248 A.3d 1285, 1289 (Pa. Super. 2021) (citing Pa.R.Crim.P. 600(C)(1)). All other periods of delay are excluded from the Rule 600 calculation. ***Id.***

We now examine the specific periods of delay. The criminal complaint was filed on September 27, 2018, and the preliminary hearing was scheduled for October 10, 2018. That hearing was continued at Appellant's request to November 16, 2018, and he was held for trial on the single count of criminal homicide. Appellant was scheduled for formal arraignment on December 11, 2018, which was postponed at Appellant's request to December 21, 2018, for him to obtain counsel. On that date, Appellant was formally arraigned, and trial was set for October 14, 2019. The Honorable Tina Gartley was assigned to the case and set a deadline of August 2, 2019, for all pretrial motions. Neither party filed motions by that date. For ease of discussion, the following table lists the foregoing events and their corresponding Rule 600 implications.

| Event | Start date | End date | # of days | Rule 600 deadline | Includable time? | Reason |
|---|---|---|---|---|---|---|
| Awaiting preliminary hearing | 9/27/2018 | 10/10/2018 | 13 | 9/27/2019 | Yes | Ordinary progression |
| Preliminary hearing postponement | 10/10/2018 | 11/16/2018 | 37 | 11/3/2019 | No | Appellant request |
| Awaiting arraignment | 11/16/2018 | 12/11/2018 | 25 | 11/28/2019 | No | Appellant request |
| Awaiting trial | 12/11/2018 | 10/14/2019 | 307 | 11/28/2019 | Yes | Ordinary progression |

Using the "includable" time concept, as of the November 28, 2019 trial date, the Commonwealth had used 320 days of the one-year period. Presuming for the moment that the Commonwealth was prepared to go to trial as scheduled on October 14, 2019, then the question becomes who bears responsibility for the subsequent delays. If none of that time is includable in the Rule 600 calculation, then Appellant's Rule 600 rights were not violated. For the following reasons, we conclude that all periods of time following the initial trial listing are not included in the Rule 600 calculation.

We first turn to why the trial was postponed from October 14, 2019. On August 6, 2019, Appellant filed a petition for a writ of *habeas corpus nunc pro tunc*, noting within that the Commonwealth did not object to the untimely nature of the motion. Petition, 8/6/19, at 1 ¶ 3 (unnumbered). Appellant alleged that the Commonwealth presented inadequate evidence to proceed on any type of homicide charge and requested dismissal. He further requested "that this [c]ourt stay the deadlines, including other pre-trial motions, in this

matter until the rest of this hearing.  With all time to run against the defendant for Rule 600 purposes."  ***Id.*** at unnumbered 5, ¶ 25.

Appellant also filed, on September 13, 2019, a request to postpone the case as he "believes that more discovery is outstanding and will be filing a supplemental discovery request."  Motion to Continue Trial, 9/13/19 (single page).  The trial court did not explicitly rule on this motion, perhaps due to the pending pre-trial writ of *habeas corpus* motion, which was litigated on October 10, 2019.  On December 31, 2019, the trial court granted partial relief by precluding the Commonwealth from proceeding on a second-degree murder charge.  The trial court then issued an order on February 13, 2020, scheduling a status conference for February 21, 2020.  At that conference, the trial court noted "there's nothing pending right now" and asked the parties if they intended to schedule a trial date.  N.T., 2/21/20, at 2.  Appellant then discussed retaining an expert:

> [APPELLANT]: … There might be some motions *in limine*.  We are speaking with an expert witness right now.  We're going through that process with him.  It's extensive discovery.  He's gotten it.  We're going to have him review it.  We're preparing that now to give to him.  He hasn't it [*sic*] yet.
>
> But [co-counsel] and I have a trial in April.  We believe it's going to be at the end of April going into May.
>
> * * *
>
> THE COURT: All right.  And so I don't know where your run date is at, but you said you're still involved in some discovery.  What are we looking at the most plausible time to list this?  Does Counsel have anything you are agreeable to time-wise?
>
> [APPELLANT]: We were thinking June.  Does that --

[THE COMMONWEALTH]: June I think would be reasonable. The only thing I would say is given the statements made by Counsel today, the Commonwealth would make an oral motion for reciprocal discovery of any expert reports that would be generated in this matter.

THE COURT: So will they be done – seeing that it's already March, will the Commonwealth have that in a timely fashion for the reciprocal discovery if we're looking…

[APPELLANT]: Well, we don't have a report yet; so I can't -- the day we get it, we'll provide it. I can't tell you for sure when that will be.

THE COURT: Do you anticipate, like, a month, two months?

[APPELLANT]: Probably longer. Probably two months is more realistic.

*Id.* at 2-4. The parties and the trial court discussed the court's calendar and agreed to set the trial for July 6, 2020.

We conclude that the period from October 14, 2019, to the rescheduled date of July 6, 2020, is delay attributable to Appellant and is therefore not included in the Rule 600 calculation. Beginning with the motion for a writ of *habeas corpus*, "the mere filing of a pretrial motion by a defendant does not automatically render him unavailable. Rather, a defendant is only unavailable for trial if a delay in the commencement of trial is caused by the filing of the pretrial motion." ***Commonwealth v. Hill***, 736 A.2d 578, 587 (Pa. 1999) (footnote omitted). If litigation delays the trial, the Commonwealth must demonstrate that it exercised due diligence in opposing or responding to the motion. ***Id.***

We need not discuss the Commonwealth's diligence in responding to the motion. While the petition for a writ of *habeas corpus* presumably could have

been decided prior to the scheduled trial date, Appellant specifically sought a postponement of trial before the trial court responded to his petition seeking dismissal of all charges.[1] This postponement request is delay caused by Appellant and is therefore solely attributable to him.

"[I]n assessing any period of delay under Rule 600, it is critical to ascertain the *cause* of such delay. Stated in the most general terms, when the Commonwealth causes delay, the Rule 600 clock continues to tick; when the defendant causes delay, the clock stops." ***Commonwealth v. Barbour***, 189 A.3d 944, 958 (Pa. 2018) (emphasis in original). Appellant caused the delay by requesting a postponement to develop pre-trial motions and consult with expert witnesses. ***See Commonwealth v. McCarthy***, 180 A.3d 368, 370 (Pa. Super. 2018) (concluding that defense postponements were not included in the Rule 600 calculation); ***Commonwealth v. Watson***, 140 A.3d 696, 699 (Pa. Super. 2016) ("[Watson] fails to develop any argument, let alone one substantiated by authority, to advance the theory that the Commonwealth may be held accountable for delay caused by defense continuances. Our jurisprudence has suggested the opposite."). Notably,

_____

[1] Appellant briefly suggests that "the time between August 6, 2019[,] and December 31, 2019[,]" should be included in the Rule 600 calculation, on the basis that the motion for a writ of *habeas corpus* was partially successful. Appellant's Brief at 9. Appellant argues that the motion was "necessary only because the Commonwealth insisted on keeping" a potential charge of second-degree murder. ***Id.*** We disagree. Aside from the fact that Appellant does not develop any argument on this point, Appellant sought complete dismissal. Moreover, the Commonwealth's decision to proceed on a general homicide charge does not mean that the Commonwealth intended to pursue a second-degree murder conviction at trial.

there is no representation that the discovery requests were due to the Commonwealth's failure to fulfill its mandatory discovery obligations. In *Commonwealth v. Andrews*, 213 A.3d 1004 (Pa. Super. 2019), "before the defense requested the continuance at issue, discovery was complete and ... trial had been scheduled for May 18, 2015." *Id.* at 1013. The defense "requested additional discovery on May 15, 2015, which required the postponement of the trial's commencement." *Id.* We held that the delay was attributable to the defense. The same point applies here. Discovery was complete and Appellant's desire to file additional motions and/or retain an expert caused the postponement.

Briefly, we note that, while Appellant requested the postponement, the parties did not promptly select a new date. Arguably, the period from December 31, 2019, when the trial court granted partial relief on Appellant's motion, through February 21, 2020, when the trial court held a status conference hearing, should be included in the Rule 600 calculation. As the trial court stated at the conference, nothing was scheduled after the court decided Appellant's pre-trial petition for a writ of *habeas corpus*. This is a period of 52 days, and Appellant would prevail as adding this total to the 320 days already included exceeds one year.[2]

---

[2] We express no opinion on whether the fact that Appellant sought a postponement in September affects the calculation of the *Mills* "normal case progression" test.

It would have been preferable for the Commonwealth to request that the court schedule the case for trial following resolution of the motion, and it is not clear why almost two full months elapsed between deciding the *habeas corpus* motion and scheduling a new trial date. Notwithstanding, the record establishes that Appellant was not prepared to proceed to trial. Appellant specifically stated in his September motion to postpone the first trial date that more time was needed:

> 2. [Appellant] file[d] a Writ of *Habeas Corpus* and has a hearing on this matter on September 19, 2019.
>
> 3. Following the hearing, [Appellant] believes that more discovery is outstanding and will be filing a supplemental discovery request.
>
> 4. [Appellant] would respectfully request a continuance in this matter with a pending *Habeas* before this [c]ourt and more discovery to commence following the hearing.
>
> 5. [The Commonwealth] concurs in this motion to continue.

Motion to Continue Trial, 9/13/19, at unnumbered 1.

Thus, while it would have behooved the Commonwealth to ensure that a trial date was selected in conjunction with the pre-trial *habeas* hearing or shortly after the motion was decided, Appellant had yet to file the motions referenced in his request for a postponement. Appellant asked the court for a continuance "and more discovery" to follow the hearing. As far as the record indicates, Appellant and the Commonwealth were informally addressing those issues. Therefore, the period from the day Appellant's writ of *habeas corpus* was decided through the rescheduled July 6, 2020 trial date is attributable to Appellant.

- 11 -

We now turn to the postponement of the July 6, 2020 trial date, which was prompted by judicial orders regarding the COVID-19 pandemic. On March 16, 2020, the Supreme Court of Pennsylvania issued an order authorizing president judges to suspend Rule 600. *See In re Gen. Statewide Jud. Emergency*, 228 A.3d 1281 (Pa. 2020). Luzerne County President Judge Michael T. Vough issued several orders pursuant to this authority, as discussed *infra*.

We conclude that the period from July 6, 2020 through the rescheduled November 16, 2020 trial date is excluded from the Rule 600 calculation due to court unavailability. In *Commonwealth v. Carl*, 276 A.3d 743 (Pa. Super. 2022), *appeal denied*, 292 A.3d 839 (Pa. 2023), we held that the period of delay due to an unambiguous suspension of Rule 600 during the COVID-19 emergency is not included in the Rule 600 calculation, and we do not consider the Commonwealth's due diligence obligations during those closures. The pertinent order in *Carl* provided, "in relevant part, that '[d]uring the emergency, the following shall apply: … (3) Suspend statewide rules pertaining to the rule-based right of criminal defendants to a prompt trial.'" *Id.* at 747 (quoting order). Conversely, in *Commonwealth v. Lear*, 290 A.3d 709 (Pa. Super. 2023), *appeal granted in part*, 2023 WL 6416182 (Pa. 2023), this Court remanded for a hearing on the Commonwealth's exercise of due diligence during a time in which the courts were unavailable for trial due to COVID-19, because the relevant emergency order did not suspend Rule 600 and merely stated that the delay "shall be considered a court postponement

and shall constitute excludable time" for Rule 600 purpose. *Id.* at 720 (quoting order).

The orders contained in the record here likewise do not unambiguously suspend Rule 600 due to COVID-19 for the entire at-issue timeframe from July 6, 2020 through November 16, 2020. The first order "suspends the operation of Rule … 600 during the time period of the judicial emergency concluding April 14, 2020 unless extended by further [o]rder of [c]ourt." Order, 3/17/20 (unnumbered). On April 2, 2020, President Judge Vough extended that order through April 30, 2020. On May 29, 2020, an order was issued stating that Rule 600 "is suspended until September 14, 2020 subject to any intervening orders." Order, 5/29/20.[3] The order unambiguously suspends Rule 600 from March 17, 2020, through April 30, 2020, and then from May 29, 2020 through September 14, 2020. Because there is a gap from April 30, 2020 through May 29, 2020, we will assume for purposes of our disposition that the holding in *Lear* applies. For ease of disposition, we will defer discussion of the Commonwealth's due diligence until after a review of all the delays.

In any event, at minimum, the courtrooms were unavailable for any jury trials. The order directed that "[a]ll **jury** trials are hereby postponed pending further Order of the [c]ourt." Order, 3/17/20, at unnumbered 2 (emphasis

---

[3] These are the only orders included in the record. It is not clear what other orders, if any, were issued to address the gap between April 30, 2020 and May 29, 2020.

added). The impossibility of holding a jury trial due to COVID-19 constitutes a judicial delay outside of the Commonwealth's control. As we have previously observed, "[i]t certainly would not serve the dual purpose of Rule 600 if a defendant could demand a jury trial (as is their constitutional right) during a time when it is impossible for the Commonwealth to conduct a jury trial, and determine that the resulting delay was not excusable under the Rule." *Commonwealth v. Faison*, 297 A.3d 810, 824 (Pa. Super. 2023).

Next, we discuss the postponement of the November 16, 2020 trial date. Trials were initially set to resume in Luzerne County in September of 2020. On November 23, 2020, the president judge ordered a second closure, specifying that "only civil and criminal proceedings which directly impact the health, safety, security, welfare or incarceration of an individual shall be held as would normally be scheduled. All other proceedings shall be postponed to a later date." Order, 11/23/20, at unnumbered 1. This order was effective through January 4, 2021; an order issued December 28, 2020, extended the order through February 26, 2021.

Briefly, we note that the November 16, 2020 trial theoretically could have taken place if jury trials had resumed, as the second emergency order was issued one week later. Appellant, however, requested a postponement. The trial court was not idle following the March 17, 2020 emergency order, and the record establishes that the parties worked with an eye towards commencing trial upon expiration of the original emergency in September. A conference was held on May 5, 2020, which resulted in the November 16,

- 14 -

2020 date. The trial court entered an order on August 26, 2020, scheduling a conference for September 4, 2020. Additionally, on September 9, 2020, Judge Gartley recused, and the case was reassigned to the Honorable David W. Lupas.[4]

On November 2, 2020, Judge Lupas issued an order rescheduling the status conference for December 7, 2020, thus postponing the November 16 trial date. While the order itself does not indicate that Appellant requested this postponement, the trial court's opinion states that it was at his request. Trial Court Opinion ("TCO"), 10/4/22, at 8 ("[Appellant] successfully sought to reschedule the November 2, 2020 status conference and it became clear that his trial was not going to occur on November 16, 2020."). We treat this as a factual finding that is supported by the record. Because Appellant requested that his trial be postponed, those delays are attributable to him.

This leads to the selection of a new trial date after jury trials resumed in late February of 2021. For the same reasons discussed *supra*, the subsequent rescheduling of the trial due to the second emergency COVID-19 order constitutes judicial delay which is not included in the Rule 600 calculation. As the trial court's opinion states, following the expiration of the second emergency order, "the [c]ourt began the task of recalendaring all the cases that had been continued due to the various state and county COVID[-

---

[4] Appellant argues that the delay caused by recusal should be included in the Rule 600 calculation, as the recusal was apparently due to the assignment of an assistant district attorney. Appellant does not develop this argument, and we will not consider it.

- 15 -

19] emergency orders issued from the inception of the crisis in March of 2020." *Id.* at 10. There is no suggestion that the trial court was required to prioritize Appellant's case to the exclusion of others, each of which may have had their own Rule 600 issues. Accordingly, the postponements due to COVID-19 are not included in the Rule 600 calculation.

The foregoing addresses all periods of delay up through the first listing after the COVID-19 closures ended. The final period of delay involves the postponements through the actual trial in October of 2021.

Judge Lupas held a status conference on April 12, 2021. At this juncture, Appellant's comments regarding an expert witness at the February 21, 2020 status conference become relevant. Recall that Appellant requested a postponement in September of 2019 for an expert witness to review the material. The Commonwealth then made an oral motion for reciprocal discovery. The trial court did not rule on the Commonwealth's motion as Appellant volunteered to supply the report. *See* N.T., 2/21/20, at 4 (Appellant's counsel stating, "Well, we don't have a report yet; so I can't -- the day we get it, we'll provide it. I can't tell you for sure when that will be.").

Appellant decided not to supply the report. At the April 12, 2021 status conference, the Commonwealth informed the court that the parties had been informally discussing the issue. The Commonwealth stated, "[Appellant's counsel] did indeed receive that report, but they are of the opinion that they do not have to provide it to the Commonwealth." N.T., 4/12/21, at 2. Appellant replied that the expert report was not yet finalized but confirmed

that he no longer intended to provide the Commonwealth with the report. Appellant explained that, per his interpretation of Rule of Criminal Procedure 573, the Commonwealth was entitled to his expert report only if Appellant had requested expert reports from the Commonwealth. Appellant did not request expert reports in his discovery motions, and he thus argued that he did not have to provide the report.

The Commonwealth responded that, "up until I would say four days ago when I spoke to [Appellant's counsel,] everyone was under the assumption that it would be provided so we could get our own expert." *Id.* at 7. Appellant's counsel stated, "I was wrong on the Rule. I was wrong." *Id.* at 8. The Commonwealth then orally requested that the trial judge compel disclosure of the expert report. The court overruled Appellant's objection and ordered him to supply the report by June 15, 2021. Appellant's trial was set for July 26, 2021.

Appellant failed to timely send the report, as established at a status conference held on July 6, 2021. Appellant stated at this conference that he had sent the expert report to the Commonwealth on June 30, 2021, and the Commonwealth stated that it "need[ed] additional time to hire an expert to review their expert report." N.T., 7/6/21, at 2. Appellant objected to a continuance, stating that he was prepared to try the case. Appellant argued that the Commonwealth had sufficient time to consult an expert before trial. The trial court stated that because the report has "just been disclosed and provided basically on the eve of the trial date, I don't see any alternative but

to continue the trial date because of that." *Id.* at 4. The trial court moved the trial date to October 25, 2021.

Appellant asked that the time be counted against the Commonwealth. The trial court denied this request, stating that the time would count against Appellant due to "the lateness and the provision of the report, which required the [c]ourt to order its disclosure, [at that is what was] causing the delay." *Id.* at 4-5. The Commonwealth also stated that, depending on its review of Appellant's report and consultation with an expert, it may file motions to exclude and/or challenge the admissibility of the evidence. The trial court stated that it would order another status conference in about a month.

That conference, the final one in this case, took place on August 6, 2021, and the Commonwealth informed the court that it was conferring with a possible expert. Additionally, the Commonwealth requested to postpone the case for the affiant to teach a class for the Pennsylvania State Police. The trial court denied that request, stating that the court had homicide trials scheduled for September and October, which "is why I chose October for this one, not to mention all of the other criminal trial weeks that we have with other trials that are scheduled." N.T., 8/6/21, at 5. Jury selection commenced October 22, 2021.

We conclude that all delays following the expiration of the second COVID order are not included in this Rule 600 calculation. Appellant's argument concerning this block of time is that the trial court erred in ordering Appellant to disclose his expert report, which led to the postponements. Initially, we

note that Appellant does not separately challenge the trial court's order to disclose the report, instead addressing the validity of that order within his Rule 600 argument. In short, Appellant offers that the Commonwealth, despite prevailing in its motion to compel disclosure, should have this time counted against it.

We will accept *arguendo* that we may review the discovery order in conjunction with the Rule 600 argument, especially because the discovery order itself is arguably moot in that Appellant did not end up calling his expert witness. **See Commonwealth v. Holt,** 273 A.3d 514, 549 (Pa. 2022) (deeming moot a claim that trial court erred by ordering capital defendant to turn over a mitigation specialist's report because the defendant did not call the witness). Presently, Appellant asserts that the trial court abused its discretion in granting the Commonwealth's discovery motion, and, in turn, delaying the trial for Appellant to comply with that request.

We conclude that the trial court did not err in counting the time against Appellant. As the Rule 600 determination is based on the discovery issue, we first begin with the relevant provisions of Rule 573:

**(C) Disclosure by the Defendant.**

(1) In all court cases, if the Commonwealth files a motion for pretrial discovery, upon a showing of materiality to the preparation of the Commonwealth's case and that the request is reasonable, the court may order the defendant, subject to the defendant's rights against compulsory self-incrimination, to allow the attorney for the Commonwealth to inspect and copy or photograph any of the following requested items:

(a) results or reports of physical or mental examinations, and of scientific tests or experiments made in connection with the particular case, or copies thereof, within the possession or control of the defendant, that the defendant intends to introduce as evidence in chief, or were prepared by a witness whom the defendant intends to call at the trial, when results or reports relate to the testimony of that witness, provided the defendant has requested and received discovery under paragraph (B)(1)(e); and

(b) the names and addresses of eyewitnesses whom the defendant intends to call in its case-in-chief, provided that the defendant has previously requested and received discovery under paragraph (B)(2)(a)(i).

(2) If an expert whom the defendant intends to call in any proceeding has not prepared a report of examination or tests, the court, upon motion, may order that the expert prepare and the defendant disclose a report stating the subject matter on which the expert is expected to testify; the substance of the facts to which the expert is expected to testify; and a summary of the expert's opinions and the grounds for each opinion.

Pa.R.Crim.P. 573.

Appellant's textual argument is straightforward: per Rule 573(C)(1)(a) the Commonwealth may seek, *inter alia*, expert reports so long as the defendant has requested and received discovery under Rule 573(B)(1)(e), which requires the Commonwealth to disclose, upon request, expert opinions within the control of the Commonwealth. Appellant did not request those materials. Additionally, Rule 573(C)(2), while providing an independent basis for disclosure upon the Commonwealth's request, refers to an expert who has not prepared a report, and here the expert was in the process of preparing one. Accordingly, Appellant argues that there was no textual basis to order discovery.

However, a case from our Supreme Court has held that, even in the absence of reciprocal discovery, the trial court does not *per se* abuse its discretion in ordering the defense to turn over expert reports to the Commonwealth. In **Commonwealth v. Faulkner**, 595 A.2d 28 (Pa. 1991), Faulkner filed a motion to retain psychiatric experts, which was granted. However, he refused to meet with the Commonwealth's psychiatrist. As a result, "the trial court required [Faulkner] to reduce the opinions of the experts to writings and provide them to the court and the prosecutor." *Id.* at 35. On appeal, Faulker alleged "that it was error for the court to order [him] to turn over to the prosecution the experts' reports before trial, without requiring the prosecution to engage in reciprocal discovery." *Id.* at 37. The Court disagreed, explaining:

> For two reasons, this argument fails. First, [Faulkner] refused to be examined by the prosecution's psychiatric expert prior to trial. As such, the prosecution did not *have* any reciprocal discovery to turn over to the appellant. Second, Rule 305(C)(2)[5] of the Pa.R.Crim.P. provides that:
>
>> [I]f the Commonwealth files a motion for pretrial discovery, the court may order the defendant … to allow the … Commonwealth to inspect and copy … upon a showing of materiality to the preparation of the Commonwealth's case and that the request is reasonable: (a) results or reports of physical or mental examinations … which the defendant intends to introduce as evidence in chief, or which were prepared by a witness who the defendant intends to call at the trial….

---

5 The Rule has since been renumbered. The quoted text is substantively similar to the current text.

> [Faulkner] has made no argument establishing that the trial judge abused his discretion in ordering him to turn over the pretrial reports of his expert witnesses. Rather, given the facts of this case, the trial judge's rulings were reasonable. **See, Commonwealth v. Logan**, … 549 A.2d 531 ([Pa.] 1988). … In the instant case, [Faulkner] refused to submit to a psychiatric examination and the prosecutor had a much stronger need to know the substance of the psychiatric experts['] testimony.

*Id.* (emphasis in original).

Both reasons also apply here. As in **Faulker**, the Commonwealth did not possess any expert reports concerning the justifiable use of self-defense. In most cases, the subject of a defense expert report will be addressing an issue already raised by the Commonwealth, *e.g.*, a competing DNA expert. The Commonwealth did not initially intend to call an expert witness on the justifiable use of force in its case-in-chief and thus had no reciprocal obligation to fulfill. The **Faulkner** Court effectively read the rule to mean that the reciprocal discovery condition applies only when the Commonwealth has its own report to provide.

Next, the Commonwealth requested discovery on the grounds that it needed to know what Appellant's expert would say so that it could consult with its own expert witnesses. Thus, as in **Faulker**, the Commonwealth claimed a need to know what that testimony would entail. We conclude that the trial court did not abuse its discretion in crediting the Commonwealth's reason for wanting the report. Appellant's expert was in the process of finishing a report and Appellant indicated that the expert may testify at trial. The court's discovery order not only permitted the Commonwealth to consider

its options in terms of retaining its own expert, but it also ensured that the Commonwealth would be able to raise objections if the expert's testimony exceeded the scope of his review. ***Cf. Commonwealth v. Roles***, 116 A.3d 122, 131–32 (Pa. Super. 2015) ("Although there are no rules of procedure in criminal cases precisely governing expert reports, it cannot be asserted that either the Commonwealth or a defendant has *carte blanche* to allow an expert to testify beyond the information contained in his or her report. To hold otherwise would eviscerate the requirement that reports be disclosed."). In this regard, we find that the intersection of this discovery ruling with the Rule 600 issue implicates the dual purpose of Rule 600.

> Rule [600] serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule [600] was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

***Commonwealth v. Ramos***, 936 A.2d 1097, 1100 (Pa. Super. 2007) (*en banc*).

In this context, we conclude that the "effective prosecution of criminal cases" includes consideration of the Commonwealth's need to review the material. Permitting Appellant to call the expert without affording the Commonwealth the opportunity to explore the issue would hamper the Commonwealth's ability to present its case on behalf of the citizens it represents. We do not diminish the effect of delaying the case further,

especially where the matter had been postponed due to COVID-19. Still, Appellant's role in causing delay cannot be overlooked. He had already agreed to provide the report on an informal basis, and the Commonwealth was entitled to rely on that representation. Appellant later determined that he should not have agreed to supply the report, and then claimed that trial should proceed solely because he was ready. His change of heart was not conveyed to the Commonwealth or the trial court until close to trial. At that point, the Commonwealth understandably sought disclosure, as its own trial preparation was premised on the understanding with Appellant's attorneys that the report would be provided.

In concluding that the trial court did not abuse its discretion in requiring Appellant to furnish the report, it follows that the trial court did not err in attributing the delays to Appellant. Accordingly, the combination of the COVID-related closures, and the subsequent delays in commencing trial, are all excluded from the Rule 600 calculation.

We now address the Commonwealth's due diligence obligations. While many of the delays are attributable to Appellant, the COVID-19 closures present a different consideration. Per *Lear*, we will assume that the emergency orders did not unambiguously suspend Rule 600 during the entire period of the judicial emergency. Thus, these closures qualify as judicial delay, but the Commonwealth must show that it acted with due diligence. We conclude that it did.

The decision in *Harth*, *supra*, establishes that the fortuity of a court postponement cannot benefit the Commonwealth. Consider the following example. The Commonwealth has listed a case for trial one day before the expiration of the mechanical run date, and none of the time is attributable to the defendant. Assume that the Commonwealth is utterly unprepared for trial, has failed to provide discovery, and did not subpoena any of its witnesses. The Commonwealth prepares a postponement form, hoping that the defendant will simply neglect to file a motion to dismiss when the case is relisted for trial. The trial court, however, suddenly declares that the courtroom is unavailable, forcing a postponement. Prior to *Harth*, the prosecution has been saved by sheer luck. *Harth* changes that. The Court adopted Justice Wecht's concurring opinion in *Mills*, *supra*, which summarized the point as follows:

> "Judicial delay" is not a mechanism or totem that exempts the Commonwealth from its obligations under the Rule. It may be invoked only after the Commonwealth has demonstrated that it is ready, able, and willing to proceed with the case against the defendant. Otherwise, the due diligence component of Rule 600 would have little, if any, meaningful import.

*Mills*, 162 A.3d at 326–27 (Wecht, J., concurring). The *Harth* Court adopted this view, and thus the Commonwealth must exercise due diligence throughout the entire case.

This is not a *Harth* situation. In that case, the prosecution had failed to provide discovery throughout the case. "The Commonwealth provided no explanation with respect to its failure to disclose discovery throughout the life

of the case or, more specifically, regarding its failure to provide the defense with the 15 new exhibits which triggered [Harth]'s second Rule 600 motion on the morning of trial." **Harth**, 252 A.3d at 606. Both **Harth** and Justice Wecht's concurrence in **Mills** focus on whether the Commonwealth was otherwise prepared to go to trial if the delays had not occurred. Appellant cites to no comparable inability of the Commonwealth to proceed to trial as scheduled but for the postponements, and the record establishes that the unavailability of the courtrooms due to COVID-19 closures had no bearing on the Commonwealth's readiness for trial.

In arguing to the contrary, Appellant focuses on the fact that the Commonwealth called an expert witness in its case-in-chief but did not consult with that expert until long after the Rule 600 period would have expired. Thus, the argument goes, the Commonwealth failed to act with due diligence because the prosecution could have spoken to an expert well before that time.

We are not persuaded by this argument. The salient point in time, in our view, is the first trial listing in October of 2019. If the Commonwealth had been prepared to go to trial at that date, then it acted with due diligence. As stated in **Harth**, the Commonwealth's due diligence obligation is to be ready for trial within one year:

> We do not suggest that the Commonwealth must be prepared to proceed to trial the moment that a criminal case is initiated; rather, the Commonwealth must utilize that year to prepare itself for trial, as is required under Rule 600(A). We have not altered that timeline, but, instead, seek merely to ensure that the Commonwealth does not summarily rely upon the judiciary as an

excuse to forego preparation for pending criminal cases, consistent with the language and purpose of Rule 600.

*Id.* at 618 n.15.

The Commonwealth utilized the first 365 days to get ready for trial and nothing indicates that the Commonwealth was unprepared to go to trial on the first trial listing, which was postponed at Appellant's request. All subsequent postponements were solely attributable to Appellant or were due to COVID-19. The fact that the Commonwealth ended up using additional evidence that it could not have presented if trial had occurred as originally scheduled does not mean that it was unprepared to go to trial at an earlier point in time. It simply means that, had the trial proceeded as scheduled, the Commonwealth would not have presented whatever additional evidence it uncovered in the interim. Appellant does not explain why the Commonwealth should be precluded from conducting additional investigations during periods of delay that it did not cause.

Furthermore, Appellant's argument ignores his own representations to the Commonwealth that he would supply the prosecution with his expert report. The Commonwealth may well have decided that consulting an expert was not warranted until it read the material Appellant was ordered to disclose. "Due diligence is fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort." ***Commonwealth v. Selenski***, 994 A.2d 1083, 1089 (Pa. 2010). Under the specific facts of this case, where Appellant agreed on-the-record to provide his expert report to

the Commonwealth, we agree with the trial court that "the Commonwealth acted with due diligence to bring [Appellant] to trial throughout the lifetime of this case." TCO at 4. The trial court therefore did not err in denying the Rule 600 claim.[6]

Appellant's second issue addresses the introduction of exhibits during the testimony of the Commonwealth's expert witness on the use of force, Corporal Kevin Selverian. Corporal Selverian testified that he used the software program Input-Ace to examine the video surveillance. That software, among other things, allows the viewer to "examine [video] frame-by-frame for a particular detail associated with the events we're looking at." N.T., 10/27/21, at 733. The Commonwealth then asked the witness to narrate his frame-by-frame review of the video surveillance by referencing exhibits the expert had prepared.

Appellant objected, stating that those exhibits "ha[ve] not been provided" in discovery. *Id.* at 734. The Commonwealth argued that the exhibits were demonstrative in nature and "not different than if I had this witness mark a photo that's already been provided" in discovery. *Id.* at 735. The Commonwealth stated that the exhibits were based on the underlying

---

[6] Appellant also argues that his constitutional right to a speedy trial was violated. *See Barker v. Wingo*, 407 U.S. 514 (1972). As the trial court noted, Appellant did not make any constitutional claim in his motion to dismiss, and his constitutional arguments are thus waived. *See Commonwealth v. Stokes*, 421 A.2d 240, 245 n.7 (Pa. Super. 1980) (finding a constitutional speedy trial claim waived due to Stokes' failure to raise it at trial court level).

video surveillance, which were disclosed in discovery. Appellant responded that the exhibits were not demonstrative because "the video was put in a specialized program to break it down[.]" *Id.* Appellant stated that he did not object to playing the surveillance videos, but rather "to the frame by frame by frame, which I haven't been provided." *Id.* at 736. The trial court stated, "Whatever objection is being made is overruled. It's the same exhibit that's already been entered." *Id.*

"Generally, evidence is admissible if it is relevant and competent. This basic rule is equally applicable to the admission of photographs, as well as other types of demonstrative evidence." *Commonwealth v. Hudson*, 414 A.2d 1381, 1386 (Pa. 1980). Appellant's substantive argument relies on *Kopytin v. Aschinger*, 947 A.2d 739 (Pa. Super. 2008), and the portion of *Kopytin* approvingly quoting the Commonwealth Court's opinion in *Robert Hawthorne, Inc. v. W.C.A.B. (Stone)*, 460 A.2d 911 (Pa. Cmwlth. 1983). We conclude that these precedents are not on point.

Both cases involve the introduction of videotapes to show that a person was not disabled. In *Kopytin*, the plaintiff sought medical expenses for injuries suffered during an automobile accident. The defense introduced 16 minutes of surveillance footage, which showed the plaintiff carrying heavy bags of groceries. *Kopytin*, 947 A.2d at 742. The plaintiff argued that the evidence should not have been introduced because, *inter alia*, "the edited version of the tape was misleading, and … it was produced one day before

trial," which did not permit sufficient time "to prepare a cross-examination as to the differences between the edited and unedited versions." *Id.* at 748.

We agreed that the excerpted video was potentially misleading, approvingly quoting *Hawthorne*. In that case, the videotape in question was introduced to establish that an individual was not disabled. The videotape showed the person "doing housework, yardwork and indicating that the claimant was capable of moving his head from side to side. The claimant then admitted that he had engaged in most of the activities depicted on these films, but he insisted that he remains disabled." *Hawthorne*, 460 A.2d at 911–12. The Commonwealth Court remarked, "we have recognized that a short sequence of film taken after a lengthy period of surveillance often can distort the true nature of an individual's injury, and is thus of questionable value as evidence." *Id.* at 912 (citation omitted).

It appears from the opinions in both decisions that the full video was not otherwise admitted, only the edited portions. That selective editing created the misleading impression. That is a significant distinction from this case, as Appellant had access to all surveillance videos and indeed relied on those videos to support his self-defense claim. The expert's testimony did not rely on a substantive edit or modification of the underlying surveillance videos. This is not a case where the expert used forensic tools to "clean up" audio recordings to make certain conversations less garbled or used software to digitally enhance video. In such a case, we would agree that the modified

material would have to be disclosed to the defense to properly prepare for trial.

That distinction aside, Appellant has waived any argument that a frame-by-frame presentation is misleading. Appellant's argument at trial had nothing to do with the admission of the evidence in terms of relevance and more with whether the material should have been disclosed in discovery. On appeal, Appellant submits that the trial court erred in failing to balance the probative value of the material against the prejudicial value, as the video "made it appear as if [Appellant], during each 1/15 of a second, made choices or could have made different choices." Appellant's Brief at 66. The Commonwealth responds on the merits, and, alternatively, that any error in the admission of the exhibits was harmless beyond a reasonable doubt.[7]

---

[7] Appellant has filed an application to strike the Commonwealth's brief. Appellant elected to proceed under Pa.R.A.P. 2154(b) (dealing with large records), thus deferring preparation of the reproduced record until after the briefs have been served. Per Pa.R.A.P. 2187(b)(3), the parties were required to serve each other with advance briefs. Appellant's application to strike noted that the Commonwealth's advance brief materially differed from the brief filed with this Court, and requested that we strike the Commonwealth's brief.

In its reply, the Commonwealth concedes that its final brief added approximately 10 pages to the advance brief sent to Appellant. The Commonwealth explains that the attorney who filed the advance brief left the office before the final brief was filed, and the current Assistant District Attorney explained that the added material developed a harmless error argument which had been omitted by the former attorney. We do not address the Commonwealth's harmless error argument and deny the application to strike.

We conclude that Appellant has waived any claim that the frame-by-frame presentation was misleading. "[A] theory of error different from that presented to the trial jurist is waived on appeal, even if both theories support the same basic allegation of error which gives rise to the claim for relief." ***Tong-Summerford v. Abington Mem'l Hosp.***, 190 A.3d 631, 649 (Pa. Super. 2018) (quotation marks and citation omitted). Appellant's objection at trial, as quoted *supra*, did not suggest to the trial court that the frame-by-frame analysis was misleading in the manner now argued on appeal. ***See*** N.T., 10/29/21, at 736 ("If they're using it, I should have been provided it. That's basic discovery.").[8] His objection was limited to the Commonwealth's failure to alert him ahead of time of its intention to have the expert review the video frame-by-frame.[9] We thus conclude that Appellant did not preserve a claim that the frame-by-frame analysis was so misleading that the evidence should have been excluded on that basis.[10]

---

[8] Appellant also argues that the evidence was not authenticated. This claim has been waived as Appellant did not cite authentication as a basis to exclude the exhibits. Moreover, it is difficult to see how Appellant could argue that the underlying videos are not authentic as Appellant likewise relied on the videos to support his self-defense claim.

[9] The jury requested to see the frame-by-frame analysis during deliberations. Appellant did argue at that point that the jury should not be shown the exhibits because the frame-by-frame breakdown was misleading and more prejudicial than probative, but that objection came far too late to preserve the issue for appeal.

*(Footnote Continued Next Page)*

J-A16030-23

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/13/2023

---

[10] In **Commonwealth v. Hindi**, 631 A.2d 1341 (Pa. Super. 1993), the trial court denied a defendant's request to slow down a video. We stated:

> In a sense, all slow motion and freeze frame video distorts reality. It distorts it in the same way that magnification of a photograph distorts reality. Such distortion may enhance the jury's understanding or it may do the opposite. It is the function of the trial court, as was done in this case, to view the evidence in camera. If the judge concludes that the jury's understanding will be enhanced and that the slow motion or freeze frame is more probative than prejudicial, then the judge should admit the evidence. Of primary relevance is the purpose for which the party offers a slow motion or freeze frame version of a videotape.

**Id.** at 1345.