J-A04014-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| LAMAR TRUITT | : | |
| Appellant | : | No. 2073 EDA 2022 |

Appeal from the PCRA Order Entered July 25, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0005449-2011

BEFORE: STABILE, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY STABILE, J.: **FILED MAY 14, 2024**

Appellant, Lamar Truitt, appeals *pro se* from the July 25, 2022 order of the Court of Common Pleas of Philadelphia County which dismissed his petition for collateral relief under the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546. We affirm.

The trial court summarized the factual background as follows:

On July 21, 2009, Horace Cunningham and Darryl Pray were walking down Bancroft Street in South Philadelphia when they ran into [Appellant] and Nieem Thomas. All four men were competing drug dealers who sold drugs on either the 1400 or 1500 block of Hicks Street. Mr. Pray and [Thomas] got into an argument over drug territory, as Mr. Pray had been selling drugs on a street where [Thomas] usually sold drugs. As they argued, [Thomas] pulled a gun from his waist and shot Mr. Pray multiple times, killing him. Immediately after the murder, Mr. Cunningham called his girlfriend . . . and told her about the shooting. Mr. Cunningham

_____

[*] Retired Senior Judge assigned to the Superior Court.

also told at least five other people in the neighborhood that he had witnessed Mr. Pray's murder, and that [Thomas] had been the shooter.

. . . .

On October 11, 2009, at 11:58 p.m., Ramer Jones, a friend of Mr. Cunningham was listening to music in his aunt's apartment at the corner of 16th Street and Morris Street, when his cousin [Rondanisha Davis] told him that someone was shooting outside. Ramer Jones went to the window and saw [Mr.] Cunningham running north on Chadwick Street. He was being chased by [Appellant], whom Ramer Jones knew, and another man, both of whom were carrying guns. Ramer Jones heard gunshots and a few seconds later he saw [Appellant] and the second man run south down Chadwick Street. They then stopped running and Ramer Jones heard the second man say to [Appellant], "[a]ll right, Cuz, I'm out."[1]

. . . .

Mr. Cunningham was transported to the University of Philadelphia Hospital, where he was pronounced dead.

Trial Court Opinion, 4/29/13, at 2-6 (citations to the record omitted).

The PCRA court summarized the relevant procedural history as follows.

On September 28, 2012, following a jury trial[,] [Appellant] was convicted of one count of murder of the first degree, one count of conspiracy to commit murder, and one count of possessing an instrument of crime ("PIC"). The [trial c]ourt immediately imposed the mandatory sentence of life in prison for the murder charge, 20 to 40 years for the conspiracy charge, and one to two years for the PIC charge. The conspiracy and PIC sentences were run consecutive to the murder sentence.

_____

[1] It should be noted that Jones was not available at trial. Pursuant to Pa.R.E. 804(b)(1), his testimony at the May 11, 2011 preliminary hearing (Jones's "initial testimony") was read into the record. *See* N.T. Trial, 9/25/12, at 99-137. It should also be noted that the initial testimony was substantially consistent with Jones's prior statement to the police (August 21, 2010). *See* PCRA Court Opinion, 11/21/22, at 8.

- 2 -

[Appellant] filed post-sentence motions, which [the trial c]ourt denied on January 15, 2013. On [February] 20, 2014, the Superior Court affirmed [Appellant]'s judgment of sentence and on July 9, 2014, the Supreme Court of Pennsylvania denied allocatur.

PCRA Court Opinion, 11/21/22, at 1.

On March 4, 2015, acting *pro se*, Appellant filed his first PCRA petition, and the PCRA court appointed counsel to assist Appellant through the proceedings. During the next few years, the 2015 PCRA petition was supplemented and amended multiple times, alleging various claims of ineffective assistance of counsel and, more recently, a claim of after-discovered evidence based on the alleged recantation of Commonwealth witness Ramer Jones.

On July 25, 2022, the PCRA court held an evidentiary hearing solely on the newly asserted claim of the alleged recantation of Jones.[2] At the

_____

[2] At the PCRA hearing, Jones

claimed that he was not in the area of 16th and Morris Street on the night of the murder. He claimed he did not give the police a statement regarding the murder of Horace Cunningham, and the signature at the bottom of his police statement was not his. He further claimed he never saw a copy of his police statement until he was on the stand during the May 11, 2011 preliminary hearing. When confronted with the fact that his preliminary hearing testimony was substantially consistent with his police statement, Jones claimed that a detective and the prosecutor brought him into the anteroom prior to the preliminary hearing and told him exactly what to say. Jones said that he memorized what the prosecutor and detective told him, and that when he could no longer remember what to say while he was on the stand, the

*(Footnote Continued Next Page)*

conclusion of the hearing, the PCRA court dismissed the petition, including the after-discovered evidence claim.

Appellant, through counsel, timely appealed the July 25, 2022 order. On October 6, 2022, Appellant filed an application with this Court to proceed *pro se*. On November 1, 2022, we remanded to the PCRA court to conduct a **Grazier**[3] hearing. After conducting a **Grazier** hearing, the PCRA court found that Appellant knowingly, intelligently, and voluntarily waived his right to counsel and allowed him to proceed *pro se*.

On April 17, 2023, while this appeal was pending, Appellant filed with the PCRA court a "Motion for hearing to establish record for appeal purposes due to absence of affidavit of probable cause for search warrant no. 146002 regarding phone record," arguing that a hearing was necessary for the Commonwealth to establish probable cause to obtain phone records. The PCRA court denied the motion. **See** PCRA Order, 4/24/23, at 1.

On appeal, Appellant raises eleven layered claims of ineffective assistance of counsel ("IAC"), arguing that PCRA counsel was ineffective for

----

prosecutor showed him his police statement. Jones claimed that he was "coerced" into testifying during the preliminary hearing, and that he "wasn't getting out of that jail" if he did not testify.

PCRA Court Opinion, 11/21/22, at 9 (citations to the record omitted).

[3] **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

- 4 -

not raising trial counsel's alleged ineffectiveness.[4]  Appellant also argues that the PCRA court erred in denying his motion for a hearing regarding the affidavit of probable cause discussed above.

In addressing Appellant's IAC claims, we apply the following legal principles:

> As originally established by the United States Supreme Court in **Strickland v. Washington**, 466 U.S. 668 (1984), and adopted by Pennsylvania appellate courts, counsel is presumed to have provided effective representation unless a PCRA petitioner pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome at trial if not for counsel's error.

**Commonwealth v. Wantz**, 84 A.3d 324, 331 (Pa. Super. 2014).  "A failure to satisfy any prong of the ineffectiveness test requires rejection of the claim

---

[4] It should be noted that these IAC claims were raised for the first time on appeal.  Because this is Appellant's first opportunity to do so, we will address them as the record is adequately developed for their disposition. **Commonwealth v. Bradley**, 261 A.3d 381 (Pa. 2021).

In his Rule 1925(b) statement, Appellant raised five claims: (1) the PCRA court erred in finding Jones's recantation not credible; (2) trial counsel was ineffective by failing to object to the admission of evidence of drugs and weapons found at Appellant's house; (3) trial counsel was ineffective for failing to object to the Commonwealth's closing argument; (4) trial counsel was ineffective for failing to object to the admission of a statement made by the decedent and a chart showing the relevant people involved in the turf war at issue in the case; and (5) trial counsel was ineffective for failing to properly prepare for trial.  These five claims have not been raised before us.  As such, we deem them abandoned.  Even if they were before us, no relief is due for the reasons provided by the PCRA court in its November 21, 2022 opinion.

of ineffectiveness." ***Commonwealth v. Daniels***, 963 A.2d 409, 419 (Pa. 2009). In general,

> counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. Where matters of strategy and tactics are concerned, a finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. [A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.

***Commonwealth v. Spotz***, 84 A.3d 294, 311-12 (Pa. 2014).

> When raising a claim of ineffectiveness for the failure to call a potential witness, a petitioner satisfies the performance and prejudice requirements of the [ineffective assistance of counsel] test by establishing that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

***Commonwealth v. Sneed***, 45 A.3d 1096, 1108-09 (Pa. 2012).

"Prejudice in this respect requires the petitioner to show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case. Therefore, the petitioner's burden is to show that testimony provided by the uncalled witnesses would have been helpful to the defense." ***Commonwealth v. Williams***, 141 A.3d 440, 460 (Pa. 2016) (cleaned up).

Several of Appellant's claims, specifically claims 1, 2, 4, and 6,[5] pertain to the statement given by Rondanisha Davis, Ramer Jones's cousin, to the police on August 23, 2010, almost one year after the murder.[6] According to

_____

[5] Claim (1) is that PCRA counsel was ineffective for failing to litigate the claim that trial counsel was ineffective for failing to investigate and present Davis's testimony and video evidence to disprove elements of conspiracy to commit murder. Claim (2) is that PCRA counsel was ineffective for failing to argue that trial counsel was ineffective for failing to investigate and present evidence that the prosecution presented perjured testimony which denied Appellant due process of law and right to fair trial. Claim (4) is that PCRA counsel denied Appellant his rule-based right to effective assistance of counsel when he failed to present Davis's testimony and video evidence to support Jones's recantation testimony. Claim (6) is that PCRA counsel was ineffective for failing to argue that trial counsel was ineffective for failing to investigate and present the testimony of Davis as a material witness. Appellant's Brief at 4.

[6] In relevant part, Davis stated:

> The night [Horace Cummingham] got shot I didn't know if they were gunshots because I hear gunshots a lot and they always sound like firecrackers, but that night they sounded a lot closer, so I dropped to the floor [of my apartment]. I don't remember how many shots I heard. I got up and looked out [of] the window. People were going in and out of the deli like nobody got shot. When the cops came I went outside to the deli to get a cookie. I didn't even know anybody got shot until the next day I seen all the teddy bears out there.
>
> [Jones] is a friend of my oldest brother . . . and they have been friends since I was young, at least ten years. I don't remember what I was doing that night, I think I was on the computer that night. I know [Jones] used to come to my house last year but I don't remember if [Jones] was over that night that [Cunningham] was killed.

Davis's Statement, 8/23/2010, at 1 (Exhibit B, Appellant's Brief).

- 7 -

Appellant, Davis's statement[7] contradicted Jones's testimony read at trial and corroborated Jones's recantation testimony at the PCRA hearing. Appellant argues that PCRA counsel was ineffective for not raising trial counsel's ineffectiveness for not investigating Davis's statement.[8]

While styled as IAC claims, Appellant is in fact challenging the PCRA court's credibility determinations and he is asking us essentially to reweigh Jones's testimony and Davis's statement in a more favorable way to Appellant.[9] No relief is due.

Here, the PCRA court found Jones's recantation testimony not credible.[10] *See* PCRA Court Opinion, 11/21/22, at 7-10. We cannot override this

_____

[7] As noted above, in her statement, Davis stated she did not remember if Jones was at her house on the night of the murder.

[8] "[A] failure to investigate and interview a witness claim overlaps with declining to call a witness since the petitioner must prove [the same five factors noted above]." **Commonwealth v. Pander**, 100 A.3d 626, 639 (Pa. Super. 2014).

[9] The true import of Appellant's challenge can be found in Appellant's reply brief, in which Appellant repeatedly attacks Davis's selective memory and Jones's "fabricated" initial testimony. While Davis recalled some events but not others, her statement did not contradict Jones's initial testimony. The fact that Davis could not remember whether Jones was in her apartment on the night of the crime does not mean that Jones was **not** at her apartment that night.

[10] Recantation testimony is a particularly untrustworthy form of after-discovered evidence. Our Supreme Court has stated:

We acknowledge that, as a general matter, recantation evidence "is notoriously unreliable, particularly where the witness claims to have committed perjury." … This Court has also emphasized,

*(Footnote Continued Next Page)*

determination, because it is not our role to reweigh testimony or to resolve questions of credibility. **See**, **e.g.**, **Commonwealth v. Viera-Castro**, 2020 WL 5016614 (Pa. Super., Aug. 25, 2020).

Even if this were truly a claim of ineffective assistance for failure to call/investigate Davis as a witness, Appellant failed to satisfy the standards articulated in **Sneed**. Appellant failed to aver that Davis was willing to testify (whether at trial or at the PCRA hearing) and failed to show how her "I don't remember" testimony would have been beneficial to Appellant under the circumstances of the case.[11]

Moreover, there was ample circumstantial evidence to support Appellant's conviction, so the absence of Davis's testimony would not have been so prejudicial to deny Appellant a fair trial. Cell phone date placed the cell phone number that Appellant identified as his in the area of the murder at the approximate time of the murder. A witness testified that Appellant told him of his involvement in the homicide while incarcerated. There was extensive testimony regarding a rivalry between drug dealers, including prior homicides, that was probative of Appellant's motive to shoot the victim. As

_____

> however, that, even as to recantations that might otherwise appear dubious, the PCRA court must, in the first instance, assess the credibility and significance of the recantation in light of the evidence as a whole.

**Commonwealth v. D'Amato**, 856 A.2d 806, 825 (Pa. 2004).

[11] As noted above, Davis's inability to remember whether Appellant was at her house the night of the murder does not contradict Jones's initial testimony.

such, Appellant failed to prove that trial counsel's failure to call Davis to testify resulted in ineffective assistance of counsel.[12]

Because Appellant failed to prove that trial counsel was ineffective, no relief is due on claims 1, 2, 4 and 6.[13]

In claim 5, Appellant argues that PCRA counsel was ineffective for not raising trial counsel's ineffectiveness in failing to oppose the admission of Jones's initial testimony under Pa.R.E. 804(b)(1).[14] Appellant's Brief at 36-43.

Appellant's introductory paragraph of the supporting argument reads as follows:

_____

[12] Appellant argues that evidence of the falsity of Jones's initial testimony can be found in Jones's description of his relationship with Davis. Appellant's Reply Brief, at 3-4. In his initial testimony, Jones stated that Jones and Davis were related as cousins. Appellant asserts in his reply brief that it is not true the two are related. Again, Appellant is asking us the reweigh Jones's testimony in a more beneficial light to Appellant. We cannot do so. Additionally, the nature of this relationship (or lack thereof) does not impair the thrust of Jones's initial testimony.

[13] One other point deserves brief mention. In claims 1 and 4, Appellant mentions a surveillance video admitted during trial which, in Appellant's estimation, discredits Jones's eyewitness identification. Other than emphatically stating that the video "totally contradicts" Jones's initial testimony, Appellant nowhere explains how he reaches this conclusion.

[14] It should be noted that this is not the first time that Appellant challenges the admission of Jones's initial testimony. On direct appeal Appellant argued that the error in admitting the testimony was made by the trial court. **See Commonwealth v. Truitt**, 473 EDA 2013, unpublished memorandum (Pa. Super. filed February 20, 2014). Here, Appellant argues that trial counsel should have raised the trial court's error and that PCRA counsel was ineffective for not raising trial counsel's ineffectiveness.

- 10 -

> A transcript of the preliminary hearing testimony of an unavailable prosecution witness is not admissible at trial where the prosecution had failed to disclose to the defense vital impeachment evidence regarding that witness prior to the preliminary hearing, so that [Appellant] was denied a full and fair opportunity to cross-examine the witness at the hearing. ***Commonwealth v. Bazemore***, 614 A.2d 684 ([Pa.] 1992); ***Crawford v. Washington***, 541 U.S. 36 (2004).

Appellant's Brief at 37-38.

Following this introduction, Appellant argues that trial counsel and PCRA counsel should have questioned the Commonwealth's failure to provide the defense with Davis's statement at the time of Appellant's preliminary hearing (May 11, 2011). Appellant contends that the Commonwealth presented Jones's testimony at the preliminary hearing without producing vital impeachment evidence in the statement that Davis gave to police over six months before the preliminary hearing. Appellant concludes that trial counsel was ineffective for failing to prevent the admission of Jones's preliminary hearing testimony at trial because it was presented in violation of ***Bazemore*** and ***Crawford***. The flaw in this argument has been discussed above: Davis's statement did not actually contradict Jones's initial testimony and therefore did not constitute impeachment evidence under ***Bazemore*** and ***Crawford***. Therefore, this argument fails.

In claim 3, Appellant argues that PCRA counsel was ineffective for failing to argue that trial counsel was ineffective for not objecting to an allegedly erroneous jury instruction relating to the first-degree and third-degree murder charges. Appellant's Brief at 24-30. Specifically, Appellant seems to argue

that trial counsel should have objected to the charge because it failed to distinguish between malice for first degree murder and malice for third degree murder. According to Appellant, the trial court erroneously used the same definition of malice for both the first-degree jury instruction and the third-degree jury instruction. The record belies Appellant's claim.[15]

Relying verbatim on the standard jury instruction, the trial court defined third-degree murder as follows:

> For murder of the third degree[,] a killing is with malice if the perpetrator's actions show his wanton and willful disregard of an unjustified and extremely high risk that his conduct would result in death or serious bodily injury to another. In this form of malice[,] the Commonwealth need not prove that the perpetrator specifically intended to kill another person. What the Commonwealth must prove, however, is that the perpetrator took action while consciously, that is to say, knowingly, disregarding the most serious risk he [or she] was creating[,] and that[,] by his [or her] disregard of that risk, the perpetrator demonstrated his [or her] extreme indifference to the value of human life.

N.T. Trial, 9/27/12, at 41-42.

Next, the trial court stated:

> **And just as with malice for first degree murder**, with regard to malice for third degree murder, if you believe that the perpetrator intentionally used a deadly weapon on a vital part of victim's body, you may regard that as an item of circumstantial

---

[15] Generally, in an appeal challenging jury instructions following a conviction and the imposition of sentence, our standard of review is for an abuse of discretion or an error of law controlling the outcome of the case. ***Commonwealth v. Williams***, 241 A.3d 1094, 1109 (Pa. Super. 2020). In reviewing a challenge to a jury instruction the entire charge is considered, not merely discrete portions thereof. ***Commonwealth v. Stokes***, 615 A.2d 704, 708 (Pa. 1992). The trial court is free to use its own expressions as long as the concepts at issue are clearly and accurately presented to the jury. ***Id.***

evidence from which you may, if you choose, infer that the perpetrator acted with malice. And just as before, the deadly weapon is defined to include any firearm.

Appellant's Brief at 25 (quoting N.T. Trial, 9/27/12, at 42-43) (emphasis in original).

Appellant's claim that the trial court provided the wrong definition of malice and/or third-degree murder is easily disproved. As noted, the trial court read, almost verbatim, the standard criminal jury instructions. To the extent it deviated from the standard language, the deviation is of no relevance, as explained below.

Appellant emphasized in his brief the phrase "And just as with malice for first degree murder," to argue that the trial court erroneously equated malice for purposes of the third-degree murder with malice for purposes of first-degree murder.

Reading the instruction in its entirety, not only those words or phrases that are convenient to Appellant, show that the trial court did not equate the two situations (first- and third-degree murder). It also shows that Appellant appears unaware that both the first- and third-degree murder jury instructions might include the following standard language:

First-degree murder:

[If you believe that the defendant intentionally used a deadly weapon on a vital part of the victim's body, you may regard that as an item of circumstantial evidence from which you may, if you choose, infer that the defendant had the specific intent to kill.]

Pennsylvania Suggested Standard Criminal Jury Instructions, § 15.2502A.

- 13 -

Third-degree murder:

[If you believe that the defendant intentionally used a deadly weapon on a vital part of [name of victim]'s body, you may regard that as an item of circumstantial evidence from which you may, if you choose, infer that the defendant acted with malice.]

*Id.* § 15.2502C.

Thus, use of deadly weapon on a vital part of victim's body may be used by the jury to infer that the defendant had the required specific intent to kill (first-degree murder) or that he acted with the required malice for purposes of third-degree murder. Both instructions accurately reflect Pennsylvania law as to the element of malice in first-degree and third-degree murder.

Because the trial court (i) correctly instructed the jury that use of a deadly weapon on a vital part of the victim's body may be used to infer malice for purposes of third-degree murder, (ii) correctly defined malice for purposes of third-degree murder, and (iii) correctly defined third-degree murder, Appellant's claim that the jury instructions were confusing or erroneous is without merit. Accordingly, PCRA counsel was not ineffective for failing to raise trial court's ineffectiveness regarding the jury instructions.

Next, Appellant claims that PCRA counsel was ineffective for failing to litigate that trial counsel was ineffective for failing to object to the admissibility/authentication of the video footage from a video store depicting, according to the Commonwealth, Appellant running from the crime scene (claim 7). Appellant's Brief at 47-51. Relatedly, Appellant claims that the

PCRA counsel was ineffective for not litigating that trial counsel was ineffective for failing to object or request a limited instruction to the slow-motion version of the video footage (claim 10). Appellant's Brief at 64-70.

Regarding claim 7, Appellant apparently takes issue with the fact that at trial, the Commonwealth presented a shortened version of the ninety-minute surveillance video originally recovered. Other than claiming that trial counsel should have asked the trial court to play the video in its entirety, Appellant fails to argue how the shortened version of the video prejudiced him. Indeed, Appellant does not argue that the shortened version does not depict what it was purported to depict (footage of an individual running from crime scene). Nor does he argue that the unplayed portion of the video was relevant or that the Commonwealth was unable to authenticate the video.

Regarding claim 10, Appellant argues that PCRA counsel was ineffective for failing to litigate that trial counsel failed to object to permitting the jury to view the slow-motion version of the surveillance videotape. Relying on **Commonwealth v. Hindi**, 631 A.2d 1341 (Pa. Super. 1993), Appellant argues that there was no need to play the video in slow motion, given that "all slow motion and freeze frame video distorts reality." Appellant's Brief at 68 (quoting **Hindi**).

Appellant seems to believe that all slow-motion videos are prejudicial because they distort reality, and, as such, they are inadmissible. Appellant's

understanding of **Hindi**, however, is questionable, as he failed to mention statements in **Hindi** that came before and after the one quoted by Appellant.

In its entirety, in **Hindi**, our Court stated:

In determining whether to admit into evidence slow motion or freeze frame video, the standard to be applied by the trial court is the same as it is for the admission of other evidence.  It must be relevant and material and its probative value must outweigh its prejudicial impact.

In a sense, all slow motion and freeze frame video distorts reality. . . . Such distortion may enhance the jury's understanding or it may do the opposite. . . . If the judge concludes that the jury's understanding will be enhanced and that the slow motion or freeze frame is more probative than prejudicial, then the judge should admit the evidence.  Of primary relevance is the purpose for which the party offers a slow motion or freeze frame version of a videotape.

**Hindi**, 631 A.2d at 1345.

Under **Hindi**, slow-motion videos are admissible under certain circumstances, thus belying Appellant's argument that all slow-motion videos are inadmissible.

Appellant also seems to believe that there is no need for slow-motion videos when there is other evidence of the events at issue.  Once again, Appellant misapprehends the relevant law.  In **Commonwealth v. Jordan**, 65 A.3d 318 (Pa. 2013), a surveillance video was played for the jury several times, in real time and slow motion.  On appeal, the defendant argued that the trial court should not have permitted the Commonwealth to show the surveillance video capturing the crimes because it distorted the events.  Our Supreme Court, upon review, disagreed, noting that "[t]he trial court did not

- 16 -

abuse its discretion when it permitted the jury to view the slow-motion version of the surveillance videotape. . . . We can discern no abuse of discretion in the trial court's determination that the slow-motion videotape could and did aid the jury in observing and evaluating this sequence of events." *Id.* at 330-31.

Appellant does not argue that the slow-motion video in this case was prejudicial. He merely claims that it was unnecessary because the Commonwealth already played the close-up version. There is no such limitation under *Hindi* or *Jordan*. Indeed, *Jordan* demonstrates that playing a video in real time does not necessarily preclude the Commonwealth from playing it in slow motion. The claim is, therefore, without merit, and we cannot find counsel ineffective for not raising a meritless claim.

In claim 8, Appellant challenges, again, Jones's initial testimony, attacking it from a different angle. Appellant's Brief at 51-57. Appellant alleges that PCRA counsel was ineffective for failing to argue that trial counsel was ineffective for failing to request a *Kloiber*[16] identification with respect to Jones.[17]

---

[16] *Commonwealth v. Kloiber*, 106 A.2d 820, 826–27 (Pa.1954), *cert. denied*, 348 U.S. 875 (1954).

[17] Trial counsel initially requested a *Kloiber* charge with respect to Jones. *See* N.T. Trial, 9/25/12, at 91. However, upon further consideration, prior to the court instructing the jury, trial counsel decided not to request an instruction that suggested that Jones saw the perpetrator of the offense when Jones's testimony only identified Appellant as someone fleeing after the shots were fired. *See* N.T Trial, 9/27/12, at 3-4.

A *Kloiber* charge instructs the jury to receive a witness's identification of a perpetrator with caution where the eyewitness: 1) did not have an opportunity to clearly view the perpetrator; 2) equivocated on the identification of the perpetrator; or 3) had a problem making an identification in the past. *Id.*, 106 A.2d at 826–27. A *Kloiber* charge is not appropriate where an eyewitness' identification of the defendant was always positive and the opportunity for the witness to observe the defendant was good. *Id.* at 826; *see also Commonwealth v. Upshur*, 764 A.2d 69, 77 (Pa. Super. 2000). Additionally, "[w]hen the witness already knows the defendant, this prior familiarity creates an independent basis for the witness's in-court identification of the defendant and weakens ineffectiveness claims based on counsel failure to seek a *Kloiber* instruction." *Commonwealth v. Ali*, 10 A.3d 282, 303 (Pa. 2010).

Here, a *Kloiber* charge was not warranted, as noted by the trial court during the charge conference. N.T. Trial, 9/25/12, at 90-91. Indeed, Jones's identification was unequivocal, did not have past issues in the identification, and his view was unobstructed. Additionally, Jones had known Appellant for over ten years. *Id.* at 102-03; *see also* Trial Court Opinion, 11/21/22, at 5 (citing N.T. Trial, 9/25/12, at 108-111). Accordingly, Appellant's IAC claim concerning the absence of a *Kloiber* instruction fails.

Next, in claim 9, Appellant argues that PCRA counsel was ineffective for failing to raise trial counsel's failure to object to other crimes evidence and for failing to request instruction for use of other crimes evidence based on Pa.R.E.

- 18 -

404(b) because "during the course of trial, the Commonwealth often referred to other murders committed by other individuals," namely the crimes associated with the people involved in the turf war.

As correctly pointed out by the Commonwealth, Rule 404(b) "only prohibits the introduction of [Appellant]'s own prior bad acts in order to prove his character. By [Appellant]'s own admission, the bad acts he claims were objectionable were not his own, but 'murders committed by other individuals.'" Commonwealth's Brief at 23.

In his reply brief, Appellant agrees with the Commonwealth. However, he notes, that "introducing evidence that he was a member of the 'Hicks Street Gang,' . . . was highly prejudicial." Appellant's Brief at 6.

In his Brief and Reply Brief, Appellant identifies only one instance in which trial counsel should have objected pursuant to Rule 404(b), namely the Commonwealth's use of a chart showing the people involved in the turf war. No relief is due.

As noted by the PCRA court,

> While the basis of [Appellant]'s claim is that trial counsel failed to object to this chart, the record shows that counsel did make an objection. N.T. 9/24/2012, at 30-43. As a result of that objection, the [trial court] heard extensive argument on the issue and ordered the Commonwealth to make substantial revisions to the chart.

PCRA Court Opinion, 11/21/22, at 21.

Because trial counsel objected to the chart on the ground that it was "extremely prejudicial," N.T. Trial, 9/24/12, at 30, Appellant's claim that trial

counsel was ineffective for not objecting to the chart is without merit. Accordingly, we cannot find PCRA counsel ineffective for not raising a meritless claim.

Next, in claim 12, Appellant argues that he was denied effective assistance of counsel throughout the PCRA proceedings. Specifically, Appellant argues that he is entitled to relief based on the cumulative effect of the alleged errors set forth in his brief, citing **Commonwealth v. Jonhson**, 966 A.2d 523 (Pa. 2009), for the proposition that "our Supreme Court held that cumulative prejudice from multiple instances of deficient performance may be properly assessed in the aggregate when the individual claims have failed to lack of prejudice." Appellant's Brief at 80.

Appellant misapprehends **Johnson** and/or the law on this topic. In **Commonwealth v. Reid**, 99 A.3d 470 (Pa. 2014), our Supreme Court stated:

> It is well settled that no number of failed ineffectiveness claims may collectively warrant relief if they fail to do so individually. [**Johnson**, A.2d 523 at 532]. However, we have recognized that, "if multiple instances of deficient performance are found, the assessment of prejudice properly may be premised upon cumulation." [**Commonwealth v. Sepulveda**, 55 A.3d 1108, 1150 (Pa. 2012)] (citations omitted).

**Reid**, 99 A.3d at 520.

In no way does **Johnson** hold that prejudice may be assessed in the aggregate from <u>failed</u> ineffectiveness claims. In fact, **Johnson** states the exact opposite: "no number of failed ineffectiveness claims may collectively warrant relief if they fail to do so individually." **Johnson**, **supra**. On the

other hand, if "<u>multiple instances of deficient performance are found</u>, the assessment of prejudice properly may be premised upon cumulation." ***Sepulveda***, ***supra***.

As noted above, we rejected all of Appellant's claims of ineffectiveness. Accordingly, there is no cumulative effect of ineffective assistance to be assessed.

Finally, in claim 11, Appellant argues that the PCRA court erred in denying a motion that he filed while the present appeal was pending, a "Motion for hearing to establish record for appeal purposes due to absence of affidavit of probable cause for search warrant no. 146002 regarding phone record."

While the motion filed before the PCRA court was styled as a motion to seek the reconstruction of the contents of an affidavit of probable cause for search warrant No. 146002, the true motive behind the motion is different. Indeed, "in the [m]otion, [Appellant] seeks a hearing to determine whether the search warrant for his phone was supported by probable cause[.]" PCRA Court Order, 4/24/23, at 1. Thus, despite the labeling, Appellant attempted to litigate the sufficiency of the affidavit of probable supporting search warrant No. 146002.

The PCRA court denied the motion, noting that it was without authority to grant the relief requested because the matter was on appeal before our Court (*i.e.*, the instant appeal). It also noted that "[w]hile search warrant #146002 . . . is mentioned in the search warrant for [Appellant]'s residence

(Commonwealth Trial Exhibit 36), neither the warrant . . . nor the associated affidavit appears anywhere in the trial record." PCRA Court Order, 4/24/23, at 2.

To the extent the motion can be construed as challenging the sufficiency of the affidavit of probable cause to support the search warrant at issue here, it is well-established that claims available before trial, at trial, or on direct appeal are waived for purposes of PCRA review and this waiver cannot be overcome, absent a full, layered ineffectiveness of counsel analysis. **See Commonwealth v. Brown**, 872 A.2d 1139, 1146-48 (Pa. 2005) (stating that claims available on direct appeal are waived for purposes of PCRA review and this waiver cannot be overcome, absent a full, layered ineffectiveness of counsel analysis). Appellant here did not pursue a suppression motion in the trial court, did not purse the issue on direct appeal, and did not couch this issue as an IAC claim. Accordingly, the claim is waived. **See** 42 Pa.C.S.A. § 9544(b).

To the extent the motion can be construed as a request for discovery, **see** Pa.R.Crim.P. 902(E)(1), Appellant failed to discuss under what authority the PCRA court could entertain said request while the appeal from the denial of PCRA relief is pending before this Court. **Id.** Additionally, Appellant failed to make "a showing of exceptional circumstances" to support his request for discovery. **Id.**

Accordingly, we affirm the order of the PCRA court and direct that a copy of the PCRA court's November 21, 2022 opinion be filed along with this memorandum.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/14/2024