631 A.2d 1341

COMMONWEALTH of Pennsylvania,

v.

Steven Omar HINDI, Appellant.

Superior Court of Pennsylvania.

Argued April 14, 1993.

Filed Sept. 29, 1993.

Guy H. Brooks, Harrisburg, for appellant.

Jacqueline L. Russell, Asst. Dist. Atty., Pottsville, for Com., appellee.

Before CAVANAUGH, BECK and JOHNSON, JJ.

BECK, Judge:

This appeal concerns the use and manner of use of videotape as evidence at trial. Appellant alleges, *inter alia,* that the trial court erred in precluding him from presenting to the jury a videotape in slow motion and/or "freeze frame." We affirm the judgment of sentence.

Every year, on Labor Day, a live pigeon shoot is held at a local park in Hegins, Pennsylvania. The annual event draws hundreds of people; some come to participate in the shoot, some come to watch the activity and others come solely to protest the shoot. This last group is made up of animal rights activists and other persons concerned about the live birds that are destroyed each year. As can be expected, there are often angry and hostile exchanges between the groups; police supervision is necessary to maintain order and discourage violence. Apparently, during the 1990 shoot, the presence of police was not enough to deter people from moving beyond lawful conduct. As a result of the events that took place on that date, appellant was convicted of criminal mischief and disorderly conduct.[1] He was sentenced to a one year term of probation and a $1,000.00 fine. This appeal followed.

The record reveals that as people were filing out of the park, a number of protestors and spectators began to badger

---

1. Appellant was convicted by a jury of criminal mischief. Immediately after the jury's verdict, the judge found appellant guilty of the summary offense of disorderly conduct.

and, ultimately, confront one another. According to the Commonwealth, appellant jumped on the hood of a car driven by a spectator. The driver continued to drive at a slow speed and then came to stop, whereupon appellant kicked in the windshield of the vehicle, jumped off the car and urged the occupants of the car to engage in a fight. The driver charged appellant, tackled him, and the two fought and wrestled until stopped by police.

Appellant's version of the events, as testified to by appellant himself and other defense witnesses, differed significantly. He claimed that he witnessed protestors being bumped and/or hit by cars as they were leaving the park. In an effort to stop this activity, he stepped directly in front of a vehicle and was hit on his left knee. He then was propelled onto the hood of the vehicle and the driver proceeded to pick up speed. Fearing serious bodily injury and in an act of self-defense, appellant kicked in the windshield of the car and the driver came to a stop. Appellant claims that he was then attacked by the driver and "other pro-shoot supporters."

Both parties offered videotapes of the event. Neither tape showed how appellant actually got on the hood of the car, a major point of contention between the parties. The Commonwealth's tape showed appellant on the hood of the car as it proceeded down the road and showed appellant in the act of kicking in the windshield. It also showed the confrontation between appellant and the driver after the car had stopped. Appellant's tape was in two parts. The first part showed appellant in front of the car urging the driver to hit him. The tape showed the vehicle making contact with appellant's leg and then the tape stopped abruptly.[2] Thereafter, the tape began again with appellant on the hood of the car as it proceeded down the road. The tape does not show the kicking in of the windshield or the fight afterward.

2. The person who made the videotape testified that the reason the tape ended abruptly at that point was because she was in danger of being hit by the car herself and must have turned the recorder off when another protestor pulled her out of the way.

Appellant's first allegation of error stems from the trial court's evidentiary rulings with respect to the defense tape. Prior to admission of the tape, the judge ruled that appellant would not be permitted to slow down the portion of the tape that showed the car making contact with appellant's knee. Further, the judge ruled that appellant was not permitted to stop the tape at that precise point, i.e., "freeze frame" the tape. The judge reasoned that appellant would present a distorted view of the incident to the jury if he was permitted to show one part in slow motion (the contact between the car and appellant's leg) and another part at regular speed (the car driving off with appellant on the hood). Further, the court noted that appellant could utilize the enlarged still photographs he had made from the videotape, which depicted the contact fairly and accurately. Those photographs were admitted into evidence and appellant was permitted to play his tape to the jury at the regular speed.[3]

Appellant insists that it was an error of law or, at least, an abuse of discretion to preclude him from showing the videotape in the manner he wished to present it.

There is little instruction from our courts, or those of other states, on the admissibility/propriety of slowing down or freezing videotaped evidence. There is no codified rule in this Commonwealth on the issue nor does there exist a uniform standard formulated by common law. While there are a few cases from other jurisdictions that address the issue, we have found no in-depth analysis on the topic.[4] *See e.g., Brown v. State*, 201 Ga.App. 510, 411 S.E.2d 366 (1991) (jury permitted to view previously admitted videotape of crime at slow speed

---

**3.** Notwithstanding the judge's order that the videotape not be run in slow motion or stopped/frozen at any point, appellant's counsel did stop the tape during the testimony of the videographer and the district attorney objected on the basis of the judge's previous order. Thereafter, appellant's counsel used the still photographs to illustrate his points.

**4.** For a general discussion of the use of videotaped evidence in criminal trials in various states and in the federal system, *see* Gregory P. Joseph, *Modern Visual Evidence*, §§ 5.01–5.05 (1993). Unfortunately, the specific concerns of presenting the evidence in slow motion or freeze frame are not addressed therein.

during its deliberations); *Scott v. State*, 390 N.W.2d 889 (Minn.App.1986) (videotape of assault played in slow motion and reverse admissible because properly authenticated).

Because we cannot rely on case law to determine the validity of appellant's claim, we are guided instead by the general rules of evidence and the particular concerns brought about by the ever-increasing use of technology in the courtroom. We must consider both the danger of distortion and manipulation of evidence and the value of presenting to the fact finder visual proof of an occurrence. Into the mix goes our desire to allow parties to try their cases in the best manner they have devised and our insistence that all cases be tried fairly and without undue prejudice.

Our standard of review is clear:

[A] basic requisite for the admissibility of any evidence in a criminal case is that it be competent and relevant. Evidence is relevant when it tends to establish facts in issue or in some degree advances the inquiry and thus has probative value. Not all relevant evidence is admissible, however, and the trial court may exercise its discretion to exclude evidence that, though relevant, may confuse, mislead, or prejudice the jury. Since rulings on the relevancy of evidence rest within the sound discretion of the trial court, they will not be reversed absent a manifest abuse of discretion.

*Commonwealth v. Stark*, 363 Pa.Super. 356, 526 A.2d 383, 391–92 (1987), *appeal denied*, 517 Pa. 622, 538 A.2d 876 (1988) (citations omitted).

Appellant sets forth a number of reasons why it was imperative that the tape be shown in slow motion and in freeze frame. He claims that the specific manner in which the videotape was shown would have established that the prosecution witnesses were mistaken with respect to several events that occurred on the day of the shoot. He insists that the tape would have rebutted directly Commonwealth testimony, given by the driver and occupant of the car, that appellant approached the vehicle from the right side and that no words were exchanged between appellant and the driver. Further, a

slowed or stopped version of the tape would have contradicted the prosecution witnesses' testimony that appellant was never in front of the car and that appellant was never hit by the car. Finally, appellant claims that viewing the tape in slow motion would have been useful in establishing how far the car traveled with appellant on the hood and would have called into question Commonwealth testimony that appellant was wearing a white shirt when, in fact, he was wearing a blue shirt. Appellant avers that none of these "contradictions" properly could be demonstrated to the jury because of the court's restrictive order.

It must be noted that appellant was permitted and, indeed several times took the opportunity, to play the tape for the jury at regular speed. We must decide whether precluding appellant from showing the tape at a slower speed or in a freeze frame prevented him from proving any of the above. We find that the majority of appellant's claims are without merit because the points he sought to prove were proven by viewing the videotape at regular speed. Our review of the videotape leads us to the conclusion that, in almost every instance, it was unnecessary to allow appellant to show the tape in slow motion. The direction from which appellant approached the vehicle is clear from the tape when played at normal speed. So too is the fact that appellant spoke to the driver while he stood directly in front of the car. Similarly, there was no need to show the tape in slow motion/freeze frame in order for the jury to realize that appellant wore a blue shirt on the day of his arrest. Nor would a slow motion rendition of the tape been of any assistance in determining the exact distance the car drove while appellant was on the hood.[5]

Whether appellant was hit by the car may or may not be completely clear from watching the tape at regular speed.

5. Obviously, a freeze frame of the tape would not have served this purpose either. Further, it does not appear that appellant ever intended to show the path of the vehicle in slow motion. At trial, he requested that he be allowed to slow down and/or freeze the tape only at the point of contact between the car and appellant. The judge ruled that he would not permit appellant to show one portion of the tape at a slow speed while showing the driving of the car at regular speed.

Actual contact, of course, would be best seen when a video tape is slowed or ultimately stopped, at the precise moment contact occurs. Since the driver testified that his car did *not* hit appellant, appellant certainly would have wanted to prove otherwise. If such rebuttal evidence was available by presenting the tape in slow motion and/or freeze frame, it seems that appellant should have been permitted to offer it.

Absent any other evidence of the contact between the car and appellant, we would find that the trial court's refusal to allow appellant to offer such proof constituted an abuse of discretion. Any concern that slow motion or freeze frame may have confused or prejudiced the jury easily could be cured by a cautionary instruction from the trial judge explaining the limited purpose of the slow motion/freeze frame. Further, concerns over distortion of the evidence could be countered by permitting the opposing party to comment freely on the use of slow motion and to show the tape at regular speed. The trial court underestimated the ability of the jurors to use their common sense; in this instance, we believe the jury was quite capable of understanding the effect of presenting the limited portion of the videotape in slow motion/freeze frame.

In determining whether to admit into evidence slow motion or freeze frame video, the standard to be applied by the trial court is the same as it is for the admission of other evidence. It must be relevant and material and its probative value must outweigh its prejudicial impact.

In a sense, all slow motion and freeze frame video distorts reality. It distorts it in the same way that magnification of a photograph distorts reality. Such distortion may enhance the jury's understanding or it may do the opposite. It is the function of the trial court, as was done in this case, to view the evidence in camera. If the judge concludes that the jury's understanding will be enhanced and that the slow motion or freeze frame is more probative than prejudicial, then the judge should admit the evidence. Of primary relevance is the purpose for which the party offers a slow motion or freeze frame version of a videotape.

In *Channel 20, Inc. v. World Wide Towers Services, Inc.,* 607 F.Supp. 551 (S.D.Tex.1985), the trial court granted a new trial on the issue of damages for pain and suffering. In that case, the widows and children of five men sought compensatory damages for pain and suffering endured by the men who were killed while working atop a 1,900 foot broadcast tower that collapsed. The manufacturer of the tower maintained that the men were not conscious during their fall and, therefore, their estates should not be awarded damages for pain and suffering. The plaintiffs offered a videotape of the event, which was played in slow motion while a witness narrated the details of the disaster. The slow motion version of the videotape showed that the men were conscious for at least a part of the nearly 2,000 foot fall to their deaths. Another tape offered by the plaintiffs was not admitted into evidence; in it the audio was amplified so that the screams of the workers could be heard.

The trial court found that the slow motion version of the tape directly rebutted the opposing party's claim that the workers were not conscious during the fall. We note that the amplified audio version of the tape was potentially prejudicial because it may have distorted and embellished the facts as they occurred. While the *Channel 20, Inc.* opinion does not state why the amplified audio version of the tape was not admitted, we would find that it was properly rejected in light of the fact that the plaintiffs were able adequately to rebut defense testimony regarding the consciousness of the workers with the slow motion version of the tape.

 Here there was an issue of fact as to whether appellant was struck by the car. Appellant, through use of slow motion and freeze frame video, had relevant and competent proof that contact indeed had been made. In this instance then, it may have been an abuse of discretion to preclude appellant from presenting that evidence to the jury. Our inquiry does not end here however. If appellant had been prevented from showing the freeze frame and/or slow motion of his contact with the car, and had not been permitted to offer any other proof of such contact, an abuse of discretion by the trial court

would have resulted in reversible error. However, the trial court admitted into evidence the enlarged still photographs, *taken from the videotape,* which reflected the precise moment of contact between the car and appellant's knee. Appellant then, was able to rebut the testimony of the Commonwealth witnesses by offering demonstrative evidence that the car struck him.

Because the jury was permitted to view this evidence, the failure of the trial court to admit the same evidence in a different manner, i.e., slow motion or freeze frame, was not error. We find that it was a proper exercise of the trial court's discretion to prevent appellant from using slow motion or freeze frame and to allow appellant to offer still photographs of the *same* videotape frames.

■ Appellant next alleges that the videotape offered by the prosecution was not properly authenticated and, therefore, was wrongfully admitted. We disagree. A witness for the Commonwealth, the driver of the car, viewed the tape and testified that it was an accurate and fair depiction of events as they occurred on the day of the shoot. *Commonwealth v. Wiltrout,* 311 Pa.Super. 115, 457 A.2d 520 (1983). Admission of the prosecution's tape was proper.

■ Appellant's final two claims of error are related. He asserts that the trial court erred in allowing the Commonwealth to show that portion of its videotape having to do with his summary charge of disorderly conduct, i.e., the footage reflecting appellant jumping off the hood of the car and taunting the driver as he assumed a karate position and kicked toward the driver and the other occupant. Appellant further claims that the trial court's immediate ruling of guilt with respect to the summary charge after the jury's verdict caught him unaware and deprived him of presenting a defense on that charge. Appellant insists that he should have been afforded separate trials on each charge.

We agree with the trial court that double jeopardy concerns would arise if the state attempted to hold two separate trials for the offenses that arose out of this single, less than two

minute, criminal episode. *See* 18 Pa.C.S.A. § 110; *Common-wealth v. Flenory*, 351 Pa.Super. 27, 504 A.2d 1341, 1342 (1986) (whether incidents are part of a single criminal episode and, therefore, should be tried together, depends on the temporal sequence of events, the logical relationship between the acts and whether the acts share common issues of law and fact). In *Commonwealth v. Campana*, 452 Pa. 233, 255, 304 A.2d 432, *vacated*, 414 U.S. 808, 94 S.Ct. 73, 38 L.Ed.2d 44, *on remand*, 455 Pa. 622, 314 A.2d 854, *cert. denied*, 417 U.S. 969, 94 S.Ct. 3172, 41 L.Ed.2d 1139 (1974), the Commonwealth sought to avoid a finding of double jeopardy and asserted that two separate crimes occurred and, therefore, two trials were appropriate. Our supreme court reasoned:

Appellants ... entered a Berks County bar and initiated a "brawl." The event lasted, according to eyewitnesses, "a couple of minutes," "two or three minutes." After the incident, appellants immediately fled. The Commonwealth argues, notwithstanding this testimony, that there were actually two episodes. Relying on the testimony of one witness concerning minimal property damage outside the bar, the Commonwealth contends that there was one episode in the bar and one outside. We reject that metaphysical division, because the record discloses that any damage outside the bar was done during appellants' quick flight from the brawl. Because the record establishes but a single criminal episode it is clear that *all* charges brought against appellant should have been consolidated in a single proceeding.

*Id.* at 255, 304 A.2d at 442–43 (emphasis in original).

■ We believe appellant is attempting to make the same argument here that the Commonwealth made, unsuccessfully, in *Campana*. Under the test in *Flenory*, there was but a single criminal episode in the instant matter. Further, the record reveals that upon the trial court's ruling of guilt on the summary offense, appellant made no objection and did not articulate his alleged surprise at the judge's action. It is clear that throughout the trial, appellant was aware that he was being tried for both charges as is reflected by his direct and cross examinations of witnesses. Appellant's counsel ques-

tioned the Commonwealth witnesses about what occurred after the car was stopped and and also questioned appellant about those same events. We therefore reject appellant's claim of surprise as well as his claim that he had no opportunity to defend on the disorderly conduct charge.

With respect to the evidence offered by the Commonwealth, we believe it was admissible and properly before the jury for a number of reasons. First, it was part of the entire criminal episode. *Campana, supra.* It not only showed appellant taunting the driver of the car, it also showed the driver pursuing appellant, tackling him and assaulting him. Second, it was relevant to rebut appellant's claims that he was in fear for his life and only kicked in the windshield in an effort to stop the car. Appellant's actions of jumping off the car and promptly attempting to engage the driver and other occupant in a physical fight belie appellant's claim that he perceived danger and only acted in self-defense. *See Stark,* 526 A.2d at 391 (videotape of defendant shortly after crime relevant to refute defendant's claim that he was too intoxicated to form intent to kill).

Appellant's claims of error fail and the judgment of sentence is affirmed.

CAVANAUGH, J., concurs in the result.