J-S07036-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RAYMOND JOSEPH SHADE JR. | : | |
| | : | |
| Appellant | : | No. 730 MDA 2025 |

Appeal from the Judgment of Sentence Entered May 5, 2025
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0004800-2022

BEFORE: BOWES, J., OLSON, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: **FILED: APRIL 10, 2026**

Appellant, Raymond Joseph Shade, Jr., appeals from the aggregate judgment of sentence of 182 to 364 months[1] of incarceration after a jury convicted him of one count each of burglary, persons not to possess firearms, prohibited offensive weapons, terroristic threats, and simple assault.[2] On appeal, Appellant presents a challenge to an evidentiary ruling. After review, we affirm.

_____

[1] For clarification, although the trial court initially stated that Appellant's aggregate sentence was 184 to 368 months of incarceration (***see*** Opinion and Order, 5/5/25, at 4; N.T., Sentencing, 3/26/25, at 28), the record reflects that the aggregate sentence was 182 to 364 months of incarceration. ***See*** N.T., Sentencing, 3/26/25, at 28; ***see also*** Sentencing Order, 3/26/25. The trial court correctly stated Appellant's aggregate sentence in its Pa.R.A.P. 1925(a) Opinion. ***See*** Rule 1925(a) Opinion, 7/9/25, at 1.

[2] 18 Pa.C.S. §§ 3502(a)(1)(i), 6105(a)(1), 908(a), 2706(a)(1), and 2701(a)(3), respectively.

In its opinion and order disposing of Appellant's post-sentence motions, the trial court summarized the relevant facts and procedural history of this matter as follows:

The evidence … showed that on the evening of October 29, 2022, [Appellant] went to the home of the victim in East Hempfield Township, Lancaster County, Pennsylvania. [Appellant] and the victim knew each other because the victim had used [Appellant] to perform general maintenance on some of his properties up until 2019.

On the evening of October 29, 2022, the victim was in his kitchen when he noticed someone was inside of his enclosed back porch and he recognized [Appellant] through the glass portion of the door. The victim went to the kitchen door and locked it. [Appellant] told the victim that he wanted to talk. The victim said he could not talk and [Appellant] then pointed a shotgun at the victim. The victim then stated he needed to use the bathroom and walked away from the door. He then called police who arrived at the victim's home.

After the police arrived, [Appellant] was located in the backyard of the victim's home with a sawed-off shot gun which had a knife screwed to the front of it like a bayonet and which had a pistol grip made of welded chain similar to the sawed-off shot gun used in the Terminator movies. Police also discovered multiple knives and a blindfold on [Appellant].

During [Appellant's] cross-examination of the victim, it became apparent that [Appellant] was obsessed with the victim and believed that the victim had something to do with [Appellant's] wife and child's disappearance. In reality, [Appellant's] wife and child had left him. [Appellant] explained that the reason he held this belief was because the victim had sent him a "calling card." [Appellant] said that while [he] was repairing a furnace at the victim's home some years before, the boiler part name had been changed to "munchkin" and "munchkin" was the name that the victim called children. (N.T. pp. 351-357).

During [Appellant's] trial for [persons not to possess firearms], the Commonwealth introduced a certified copy of the docket entries and sentencing sheet for [Appellant's] felony convictions pursuant to the Controlled Substance, Drug, Device and Cosmetic

Act docketed in the Lancaster County Court of Common Pleas at docket number 2273 of 2003. The sentencing sheet showed convictions for three counts of delivery of a controlled substance, all of which are felonies. (N.T. pp. 502 504; Commonwealth Exhibits 21 and 22). No other facts regarding these offenses were placed on the record.

Sentencing was scheduled for October 31, 2024; however, on September 30, 2024, the Office of the Public Defender filed a Motion to Determine Competency Prior to Sentencing which was granted by the court and sentencing was deferred. On January 23, 2025, the Commonwealth filed a motion to reschedule sentencing and contended that [Appellant] had been found competent. Sentencing was rescheduled for March 3, 2025.

* * *

Sentencing was finally held on March 26, 2025. The court sentenced [Appellant] as follows: (1) 80 months to 160 months for burglary; (2) 90 months to 180 months for possession of firearm by prohibited person to run consecutive to count 1; (3) 12 months to 24 months for [prohibited offensive weapons] to run consecutive to count 2; (4) 12 months to 24 months for terroristic threats to run concurrently to count 1; and (5) 12 months to 24 months for simple assault to run concurrently to count 1. The aggregate sentence imposed was 18[2] months to 36[4] months in a state correctional institution.

Opinion and Order, 5/5/25, at 2-4 (some formatting altered).

Appellant filed timely post-sentence motions asking the trial court to vacate his conviction for persons not to possess firearms, and vacate the sentences for terroristic threats and simple assault, arguing that those convictions merged with burglary for sentencing pursuant to 18 Pa.C.S. § 3502(d). Post-Sentence Motion, 4/7/25, at 1-3 (unnumbered).[3] The trial

---

[3] Generally, a post-sentence motion must be filed within ten days after the imposition of sentence. *See* Pa.R.Crim.P. 720(A)(1). Here, the trial court sentenced Appellant on March 26, 2025. The last day to file a timely post-

*(Footnote Continued Next Page)*

- 3 -

court ultimately denied, in part, and granted, in part, Appellant's post-sentence motions. *See* Opinion and Order, 5/5/25, at 19. Specifically, the trial court denied Appellant's request to vacate his conviction for persons not to possess firearms, and granted Appellant's motion to vacate the sentences for terroristic threats and simple assault. *See id.* However, as the original sentences for terroristic threats and simple assault were ordered to run concurrently with Appellant's sentence for burglary, Appellant's aggregate sentence was not affected by the May 5, 2025 order. Moreover, since the May 5, 2025 order amended Appellant's sentence while the trial court maintained jurisdiction, Appellant's appeal is properly from the amended sentence reflected in the May 5, 2025 order. *See Commonwealth v. Garzone*, 993 A.2d 1245, 1254 n.6 (Pa. Super. 2010) (explaining that when the trial court amends the judgment of sentence during the period it maintains jurisdiction, the direct appeal lies from the amended judgment of sentence).

On June 4, 2025, Appellant filed a timely notice of appeal from the amended judgment of sentence. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

On appeal, Appellant presents the following issue:

_____

sentence motion was Monday, April 7, 2025, as the tenth day after sentencing fell on a Saturday, April 5, 2025. *See* 1 Pa.C.S. § 1908 (for computations of time, if the last day of any such period falls on a Saturday, Sunday, or any legal holiday, such day shall be omitted from the computation). Accordingly, Appellant's post-sentence motion, which was filed on Monday, April 7, 2025, was timely filed.

- 4 -

Did the trial court err in admitting evidence that police found a meth pipe in [Appellant's] possession when he was arrested, and in permitting testimony via Sergeant [Richard] Gauck regarding symptoms of a person being under the influence of methamphetamine?

Appellant's Brief at 6.[4]

Appellant argues that the evidence and testimony concerning methamphetamine and the meth pipe was completely irrelevant to the charged offenses as no drug charges were filed, and there was no evidence that Appellant was under the influence at the time of the incident. Appellant disagrees that he opened the door to this evidence in his opening statement when he said that he was the victim of terrorism who needed to protect himself and his family from people trying to harm him. Appellant contends this evidence served solely to inflame the jury by suggesting Appellant was a dangerous addict, the challenged evidence was more prejudicial than probative, and the trial court's stated rationale for admitting the evidence was insufficient to justify admission. *Id.* at 14-17.

Our standard and scope of review are well settled:

We review a challenge to the trial court's evidentiary rulings for an abuse of discretion. Accordingly, our standard and scope of review is limited:

_____

[4] In his brief, Appellant notes that although he raised an additional issue in his Rule 1925(b) statement, he is not pursuing that issue on appeal. Appellant's Brief at 6, n.1. Accordingly, we confine our discussion to the issue Appellant presented and argued in his brief, and we deem the unbriefed issue waived on appeal. *See, e.g., Commonwealth v. Einhorn*, 911 A.2d 960, 970 (Pa. Super. 2006)(providing that an issue that is not properly briefed will be considered waived).

The admission of evidence is committed to the sound discretion of the trial court, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous. Where the evidentiary question involves a discretionary ruling, our scope of review is plenary.

*Commonwealth v. Williamson*, 330 A.3d 407, 414 (Pa. Super. 2025)(citations omitted and formatting altered).

"Although not evidence, an opening statement represents the first opportunity that the jury has to hear the facts of the case. Since the jurors' minds are essentially 'blank slates' at this stage of the trial, opening statements can have a tremendous impact on the ultimate outcome of the trial." *Commonwealth v. Parker*, 882 A.2d 488, 493 (Pa. Super. 2005). Furthermore:

Pennsylvania Rule of Evidence 401 defines "relevant evidence" as that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Pa.R.E. 401. However, "[r]elevant evidence may nevertheless be excluded 'if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'" *Commonwealth v. Broaster*, 863 A.2d 588, 592 (Pa. Super. 2004) (citing Pa.R.E. 403).

Because all relevant Commonwealth evidence is meant to prejudice a defendant, exclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case. As this Court has noted, a trial court is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts form part of the history and natural development of the events and offenses with which [a] defendant is charged.

- 6 -

*Id.* (citation omitted).

***Commonwealth v. Becher***, 293 A.3d 1226, 1239–40 (Pa. Super. 2023)

(some formatting altered). "Since rulings on the relevancy of evidence rest

within the sound discretion of the trial court, they will not be reversed absent

a manifest abuse of discretion." ***Commonwealth v. Hindi***, 631 A.2d 1341,

1344 (Pa. Super. 1993)(citation omitted). Finally, where the trial court

indicates the reason for its decision to admit evidence, our scope of review is

limited to an examination of the stated reason. ***Commonwealth v. Minerd***,

753 A.2d 225, 229 (Pa. 2000).

> The trial court addressed Appellant's argument as follows:
>
> On October 29, 2022, Sergeant Richard Gauck, then a patrol officer, with the East Hempfield Township Police Department responded to a call of "weapons in progress" for the address of 94 Main Street. (N.T. pp. 204-205). Sergeant Gauck testified about his encounter with [Appellant] at that address, which was the home of the victim, Alan Cherkin, who made the 9-1-1 call. (N.T. p. 206). As part of his testimony, Sergeant Gauck was asked about all of the items found on [Appellant's] person and [Appellant's] motorcycle and he provided authentication for the video taken from his body-worn camera.
>
> Sergeant Gauck explained to the jury what the items were that were taken from [Appellant's] person including several knives. Sergeant Gauck also told the jury that [Appellant] had a sawed-off shotgun that had a switchblade knife affixed to it. (N.T. pp. 222-23, 226-28). He described the handle of the shotgun as having a pistol grip made from welded chain like the one used in the Terminator movie. (N.T. p. 229).
>
> The jury was then shown the video of another officer opening a black pouch at which time the Commonwealth asked Sergeant Gauck whether he was present for [Appellant's] opening statement about "the grand conspiracies in the world, real estate."

(N.T. p. 277). At this point, standby counsel[5] made an objection to the meth pipe that the prosecutor was going to introduce because [Appellant] was not charged with possession of drug paraphernalia. (N.T. pp. 277-78). The Commonwealth's argument was that the jury was entitled to take this into consideration based upon the [Appellant's] theory of mass conspiracy. Standby counsel further objected that the meth pipe was highly prejudicial and further that there was no drug testing done. (N.T. pp. 278-79). Because of [Appellant's] opening statement, the court overruled the objection and permitted the Commonwealth to proceed. (N.T. p. 280).

The Commonwealth then asked Sergeant Gauck about his work history including his work with the Drug Task Force and then asked him what the photograph was in Commonwealth Exhibit 13B. The testimony was as follows:

Q. What is a pipe?

A. Well, there are several different types of pipes depending on which type of substance that is being ingested or smoked. It's a glass smoking device, essentially, where one end could be burned and you can inhale the fumes from whichever substance you're using.

Q. Putting Commonwealth's 13B on the big screen, indicating up here at the top where my cursor is, this glass pipe, what is that?

A. That is what is known, or known to me in my training and experience, as a meth pipe.

(N.T. pp. 282-83).

Sergeant Glauck went on to confirm that the meth pipe was taken off of the [Appellant]. The Commonwealth then asked what meth was. Sergeant Gauck described meth as a stimulant for the system. (*Id.*). The court then required the Commonwealth to qualify Sergeant Gauck as an expert, which the Prosecution did. (N.T. pp. 285-89). Sergeant Gauck was then asked whether he

_____

[5] Appellant represented himself at trial with the assistance of stand-by counsel. *See* N.T., Trial, 7/15/24, at 7; *see also* Opinion and Order, 5/5/25, at 2.

has observed people under the influence of methamphetamines and what some of the symptoms are.

A. Sometimes energetic. Sometimes they express, you know, partial delusions. Sometimes shaky, you know, sweating.

Q. Would it be safe to say you have absolutely no idea that [Appellant] was 100 percent using methamphetamine that day?

A. I - no, did I not know that [sic].

Q. Is it also safe to say that you found in his pocket a meth pipe?

A. Correct.

(N.T. p. 290). This concluded the Commonwealth's questions regarding the meth pipe.

[Appellant's] opening statement contained the following:

• But I am a victim of terrorism, and I was - I only would have had anything in my possession to protect my - and defense myself. My child and my wife had disappeared. And [the victim] is a very wealthy, powerful man with many connections who - who - I have tried to have this taken care of through all the proper channels .... (N.T. p. 188)[.]

• Either way, I can prove that there was a conspiracy and there were people out there trying to kill me and - and harm me and take my things and - messing with my family. (N.T. p. 193).

• And people need to know that you can't be scared and you can't back down from this and you need to stand up for yourself and let the jury make the decision on what's right or what's wrong and - but you have the right - I have the right to defend my life, my liberty, my family, my property and -- and I'm not backing down from any criminals or any corruption. (N.T. p. 194).

It was the court's opinion that the prosecution was attempting to relate the finding of the meth pipe and the information about how someone under the influence of methamphetamine might behave to these portions of [Appellant's] opening statement. Specifically,

it was evident that [Appellant] had paranoid and delusional thoughts and [Appellant] believed that he had the right to defend himself and use anything in his possession to do so.

Rule 1925(a) Opinion, 7/9/25, at 2-5 (some formatting altered).

Upon review, we discern no abuse of discretion. ***Williamson***, 330 A.3d at 414; ***Hindi***, 631 A.2d at 1344. We agree with the trial court that Appellant opened the door to the evidence by placing his mental state and perception of reality at issue in his opening statement. ***See*** Rule 1925(a) Opinion, 7/9/25, at 5. The evidence was relevant as it tended to make a fact (a basis for Appellant's perceptions) more probable than it would have been without the evidence. ***See Becher***, 293 A.3d at 1239. The probative value was not outweighed by the danger of unfair prejudice as the officer's testimony was limited, offered only in general terms, and expressly disclaimed any opinion as to whether Appellant was actually under the influence at the time of the charged conduct. ***See*** N.T., Trial, 7/16/24, at 290. We agree with the trial court that this limitation ensured that the jury received the evidence regarding meth use only for the narrow inferential purpose for which it was offered: assessing a plausible alternative explanation for Appellant's stated perceptions. ***See id.***; Rule 1925(a) Opinion, 7/9/25, at 5. For these reasons, we conclude that Appellant is not entitled to relief on this issue.

In any event, even if the trial court abused its discretion in permitting the challenged evidence, we would agree with the trial court's alternative conclusion that any error was harmless. ***See id.*** at 5-6. "The harmless error doctrine, as adopted in Pennsylvania, reflects the reality that the accused is

entitled to a fair trial, not a perfect trial." ***Commonwealth v. Hairston***, 84 A.3d 657, 671 (Pa. 2014) (citations omitted). Our Supreme Court has described the harmless analysis as follows:

> Harmless error exists if the record demonstrates either: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

***Id.*** at 671-72 (citations omitted).

The record reflects that the properly admitted evidence of Appellant's guilt was overwhelming. The record reveals that on October 29, 2022, Appellant went to the victim's residence and entered the victim's enclosed back porch. ***See*** N.T., Trial, 7/16/24, at 330-332. Appellant possessed a modified and functional sawed-off shotgun that was affixed with a knife and also possessed eight additional knives; law enforcement additionally recovered a sword and nunchucks from a motorcycle registered in Appellant's name found nearby. ***Id.*** at 257-67, 387-88. When the victim encountered Appellant in the enclosed porch, Appellant told the victim that they needed to talk, and when the victim refused, Appellant told him, "you have to" and pointed the shotgun at the glass door behind which Appellant was standing. ***Id.*** at 334-45. Therefore, we conclude that the properly admitted evidence of Appellant's guilt was overwhelming, and therefore, even if the admission of

the meth pipe and related testimony was an abuse of discretion, we conclude

that any error was harmless.  **See Hairston**, 84 A.3d at 671.

Based on the foregoing, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 04/10/2026